## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **THOMASBORO LANDCO, LLC,** | ) | |
| | ) | **Case No. 22-10260-HAC-11** |
| Debtor. | ) | |
| ———————————————— | ) | |
| | | |
| **LEGALIST, INC., on behalf of itself and** | ) | |
| **certain investment fund(s) for which it** | ) | |
| **serves as investment advisor,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adv. Proc. No. _____** |
| **v.** | ) | |
| | ) | |
| **THOMASBORO LANDCO, LLC,** | ) | |
| **THOMASBORO LANDCO II LLC** | ) | |
| **CRITERIA DEVLOPMENT, LLC,** | ) | |
| **EAST DEVELOPMENT, LLC,** | ) | |
| **CAVINESS & CATES BUILDING** | ) | |
| **AND DEVELOPMENT COMPANY** | ) | |
| **OF GREENVILLE, and** | ) | **ADVERSARY** |
| **GREAT SOUTHERN HOMES, INC.,** | ) | **COMPLAINT** |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

PLAINTIFF LEGALIST, INC., on behalf of itself and certain investment fund(s) for which it serves as investment advisor (collectively, "**Legalist**" or "**DIP Lender**"), by and through its undersigned attorneys, hereby submits this adversary complaint (the "**Complaint**") to determine the validity, priority and/or extent of certain liens and security interests (as described more fully below, collectively, the "**Subsequent Liens**") held by each of DEFENDANTS EAST DEVELOPMENT, LLC, CAVINESS & CATES BUILDING AND DEVELOMENT COMPANY OF GREENVILLE, and GREAT SOUTHERN HOMES, INC. (each, a "**Subsequent Transferee**") in all or certain portions of real property presently owned by DEFENDANT THOMASBORO LANDCO, LLC (*i.e.*, the above-captioned "**Debtor**") and non-

1

Debtor DEFENDANT THOMASBORO LANDCO II LLC (as described more fully below, the "**Thomasboro Property**"), relative to security interest and lien of DIP Lender in the same Thomasboro Property (as described more fully below, the "**DIP Lien**").

<u>NATURE OF ACTION</u>

1.      Each of the Subsequent Liens was conveyed by Debtor to the respective Subsequent Transferees <u>after</u> DIP Lender obtained its valid and perfected DIP Lien by final order of the United States Bankruptcy Court for the Southern District of Alabama (the "**Bankruptcy Court**") in May 2022.  Therefore, the DIP Lien and DIP Lender's attendant rights vis-à-vis the Thomasboro Property are senior in priority and otherwise superior to the Subsequent Liens and the attendant rights of each Subsequent Transferee.  Nevertheless, each of the Subsequent Transferees (unlike other similarly situated subsequent lienholders) has refused to enter into recordable documentation acknowledging its Subsequent Lien in the Thomasboro Property is subordinate to the DIP Lien and agreeing not to interfere with imminent efforts by DIP Lender to enforce the DIP Lien and foreclose on the Thomasboro Property.

2.      Additionally, the Subsequent Lien held by DEFENDANT EAST DEVELOPMENT, LLC was conveyed by Debtor, when it was indisputably insolvent, to secure a $5 million loan borrowed by a non-debtor – DEFENDANT CRITERIA DEVLOPMENT, LLC – the proceeds of which, on information and belief, were used to pay the Debtor's owners and affiliated/insider investors as well as costs on non-Debtor development projects.

3.      Accordingly, DIP Lender seeks a judgment declaring its superior rights in the Thomasboro Property, including the senior priority of the DIP Lien over the Subsequent Liens, and avoiding the Subsequent Lien of DEFENDANT EAST DEVELOPMENT, LLC as both an actual and constructive fraudulent transfer.

4.     This adversary proceeding arises in and/or is related to *In re Thomasboro Landco, LLC*, Chapter 11 Case No. 22-10260 pending in this district before the Bankruptcy Court (the above-captioned "**Bankruptcy Case**").

5.     The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6.     Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

7.     This is a core proceeding under 28 U.S.C. § 157(b).

8.     Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

## PARTIES

9.     PLAINTIFF LEGALIST (aka "**DIP Lender**") is a Delaware corporation.

10.     DEFENDANT THOMASBORO LANDCO, LLC (aka the "**Debtor**" in the above-captioned Bankruptcy Case) is a North Carolina limited liability company with its principal place of business and its chief executive office located in the Southern District of Alabama.

11.     DEFENDANT THOMASBORO LANDCO II LLC ("**Landco II**") is a North Carolina limited liability company with its principal place of business and its chief executive office located in the Southern District of Alabama.

12.     DEFENDANT CRITERIA DEVELOPMENT, LLC ("**Criteria Development**"), is an Alabama limited liability company.

13.     DEFENDANT EAST DEVELOPMENT, LLC ("**East Development**") is a North Carolina limited liability company.

14. DEFENDANT CAVINESS & CATES BUILDING AND DEVELOPMENT COMPANY OF GREENVILLE ("**Caviness & Cates**"), is a North Carolina corporation.

15. DEFENDANT GREAT SOUTHERN HOMES, INC. ("**Great Southern Homes**"), is a South Carolina corporation.

BACKGROUND

**A.     General Debtor and Bankruptcy Case Background**

16. On February 11, 2022 (the "**Petition Date**"), the Debtor filed with the Bankruptcy Court a voluntary Chapter 11 petition commencing the Bankruptcy Case.

17. At all relevant times, J. Marion Uter, who owns 50% of the Debtor's membership interests, has been and continues to be the manager of Debtor. *See* Doc. No. 14.

18. The Debtor's principal asset is 1,137.4 acres of land located in Brunswick County, North Carolina (aka the "**Thomasboro Property**") comprising approximately 2,500 entitled residential lots (the "**Entitled Lots**").

**B.     Senior Lender Liens**

19. Prior to the Petition Date, the Debtor had acquired the Thomasboro Property with a purchase money financing loan provided by a group of lenders (the "**Senior Lenders**").

20. In exchange for the loan, on or about June 24, 2021, Debtor issued the Senior Lenders a $13 million promissory note and a deed of trust which, once recorded, provided the Senior Lenders with first priority liens and security interests in the Thomasboro Property (collectively, the "**Senior Lender Liens**") to secure the Debtor's payment and performance under the Promissory Note.

21. It was Debtor's inability to timely pay the Senior Lenders under the terms of the promissory note that led to its filing for bankruptcy.

**C.**    **Bankruptcy Court Approves DIP Facility and Terms of DIP Credit Agreement**

22.    On April 8, 2022, the Debtor filed the DIP Financing Motion[1] by which Debtor sought Bankruptcy Court authority to borrow from DIP Lender approximately $26 million in new money under a 24-month multi-draw debtor-in-possession financing facility (the "**DIP Facility**").

23.    The DIP Facility is governed by the terms and conditions of the DIP Credit Agreement,[2] pursuant to which the Debtor agreed, subject to Bankruptcy Court approval, to grant DIP Lender security interests and liens (as defined therein, the "**DIP Liens**") on substantially all Debtor assets (as defined therein, the "**DIP Collateral**"), to secure Debtor's payment and performance of all obligations due and owing to DIP Lender thereunder (as defined therein, the "**DIP Obligations**").

24.    Describing the DIP Liens in the DIP Financing Motion, the Debtor clearly stated on the first page thereof "[t]he liens proposed to be granted would be senior liens on all property of the Debtor" and "be deemed perfected without the need for any further filings" (emphasis added).

25.    On May 16, 2022, the Bankruptcy Court entered the DIP Financing Order,[3] granting the DIP Financing Motion on a final basis.

---

[1] "**DIP Financing Motion**" refers to that certain *Debtor's Motion For Final Order Authorizing The Debtor To Obtain Postpossession Financing And Grant Senior Liens And Superpriority Administrative Expense* (Docket Number 51 in the Bankruptcy Case).

[2] "**DIP Credit Agreement**" refers to the final executed version of that certain *Debtor-In-Possession Term Loan Credit Agreement* dated as of May 25, 2022 entered into among Debtor and DIP Lender. The terms of the DIP Credit Agreement, a true and correct copy of which is attached hereto as <u>Exhibit A</u>, are hereby expressly incorporated into this Complaint as if fully set forth herein.

[3] "**DIP Financing Order**" refers to that certain *Final Order Authorizing Debtor-In-Possession Financing* (Docket Number 97 in the Bankruptcy Case). The terms of the DIP Financing Order, a true and correct copy of which is attached hereto as <u>Exhibit B</u>, are hereby expressly incorporated into this Complaint as if fully set forth herein.

26.     Among other things, the DIP Financing Order ordered, pursuant to 11 U.S.C. §§ 364(c) and (d), that:

> The DIP Lender holds security interests in and liens on all DIP Collateral … which the Debtor has (to the extent of its right title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged and set over and unto the DIP Lender, and which have been automatically perfected *notwithstanding any notice or recordance requirements of non-bankruptcy law* (collectively, the "DIP Liens") ….

*See* Ex. B, ⁋ 9 (emphasis added).

27.     As a result, consistent with the clear intentions of the parties and the Bankruptcy Court, since May 16, 2022, DIP Lender has had and continues to have a valid, perfected DIP Lien in the entirety of the Thomasboro Property, including all Entitled Lots thereon.

28.     In the DIP Financing Order, the Bankruptcy Court ordered that it "has and shall retain jurisdiction to enforce this [DIP Financing Order], including to hear any motion or application by … DIP Lender related hereto…." *See* Ex. B, ⁋ 25.

29.     This Complaint, and the relief DIP Lender requests herein, falls within the scope of actions for which the Bankruptcy Court retained jurisdiction in the DIP Financing Order.

**D.     DIP Lender Advances $26 Million Under DIP Facility to Fund Payoff of Senior Lenders and Development of Thomasboro Property**

30.     On May 25, 2022, as explicitly contemplated in the DIP Financing Order and DIP Loan Documents, DIP Lender advanced $12,391,680.83 under the DIP Facility in the form of a direct payment to the Senior Lenders in satisfaction of their secured claims. *See* Ex. B, ⁋ 6; Ex. A, § 2.02(i).

31.     Documentation evidencing the payoff of all amounts owed to Senior Lenders that were secured by their Senior Lender Liens on the Thomasboro Property has been recorded with the Register of Deeds of Brunswick County, North Carolina.

6

32.     Thereafter, between June 16, 2022, and June 5, 2023, DIP Lender funded twelve draw requests by the Debtor under the DIP Facility, advancing an additional $13,552,989.39 in total directly to the Debtor to fund development of the Thomasboro Property.[4]

33.     Following the advance made by DIP Lender on June 5, 2023, substantially all of the $26 million of new funding DIP Lender agreed to make available under the DIP Facility had been withdrawn, and the DIP Facility has remained fully extended and outstanding since then.

**E.     The Debtor's Plan is Confirmed**

34.     On May 31, 2022, the Debtor filed its Chapter 11 Plan.[5]

35.     The Plan provided (among other things) that (a) any and all amounts owed or to be owed by the Debtor to DIP Lender under the DIP Facility (all such amounts defined therein as the "**DIP Loan Claims**") constituted superpriority expense claims under 11 U.S.C. § 507(a)(1), (b) DIP Loan Claims were classified as a standalone unimpaired class (Class 3), (c) Debtor "shall pay the DIP Loan Claims in full in accordance with the DIP Loan Documents" the terms of which "shall remain in full force and effect," and (d) "DIP Lender shall retain all liens and security interests in the Collateral provided for under the DIP Loan Documents and DIP Financing Order."  *See* Ex. C, §§ 3.03 and 5.05 (emphasis added).

36.     On July 21, 2024, the Court entered the Confirmation Order[6] confirming the Plan.

37.     In the Confirmation Order, the Bankruptcy Court ordered that "[n]otwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until this case is

---

[4] For the avoidance of doubt, DIP Lender makes no admissions herein regarding the Debtor's actual use of funds it advanced to the Debtor under the DIP Facility.  DIP Lender reserves all rights.

[5] "**Plan**" refers to that certain *First Amended Plan of Reorganization* (Docket Number 106 in the Bankruptcy Case). The terms of the Plan, a true and correct copy of which is attached hereto as Exhibit C, are hereby expressly incorporated into this Complaint as if fully set forth herein.

[6] "**Confirmation Order**" refers to that certain *Order Confirming Plan* (Docket Number 137 in the Bankruptcy Case).  The terms of the Confirmation Order, a true and correct copy of which is attached hereto as Exhibit D, are hereby expressly incorporated into this Complaint as if fully set forth herein.

closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of this case that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out." *See* Ex. D, ¶ 10.

38.     Moreover, the Court explicitly retained jurisdiction for specific purposes set forth in Article 12 of the Plan, including:

- "to enforce all orders, judgments, injunctions, and rulings entered in connection with the Reorganization Case" (Ex. C, § 12.02(k));

- "<u>to determine all questions and disputes</u>" regarding "any sale or transfer of assets or Property by the Debtor or Reorganized Debtor" or "<u>title to the assets of the Debtor, the Estate, or the Reorganized Debtor</u>" (Ex. C, §§ 12.02(m) and (n) (emphasis added)); and

- "to determine any matters that may arise in connection with or relating to the DIP Loan, the DIP Loan Documents, or the DIP Financing Order" (Ex. C, § 12.02(t)).

39.     This Complaint, and the relief DIP Lender requests herein, falls within the scope of actions for which the Bankruptcy Court retained jurisdiction in the Confirmation Order.

**F.     Debtor Commits Numerous Defaults Under DIP Credit Agreement, Including by Granting Subsequent Liens in Thomasboro Property Without DIP Lender Consent**

40.     The DIP Credit Agreement prohibits Debtor from granting liens in the Thomasboro Property without first obtaining DIP Lender's advance consent to do so.

41.     The purpose of this prohibition is to give DIP Lender the opportunity to prevent the Debtor from issuing such liens unless the grantees acknowledge the liens they are receiving are junior in priority to the DIP Lien and agree to certain typical restrictions on their ability to oppose, limit, delay or prevent efforts or foreclosure proceedings by DIP Lender to satisfy outstanding DIP Obligations out of their shared collateral (*i.e.* the Thomasboro Property).

42.	After the DIP Lien in the Thomasboro Property had been granted to DIP Lender and automatically perfected pursuant to the DIP Financing Order, without obtaining DIP Lender's advance consent in compliance with the DIP Credit Agreement, and without any notice at all to DIP Lender in most if not all cases, Debtor issued deeds of trust to five third parties, granting each of them a lien in all or a portion of the Thomasboro Property – including deeds of trust to each of the Subsequent Transferees giving rise to the Subsequent Liens (the "**Subsequent DOTs**").

43.	These five deeds of trust were recorded with the Brunswick County Register of Deeds as follows:

a.	Deed of Trust dated August 8, 2022, and filed of record with the Brunswick County Register of Deeds at Book: 4911 Page: 974 on September 15, 2022, granted by Debtor for the benefit of DEFENDANT CAVINESS & CATES on certain Entitled Lots within the Thomasboro Property[7];

b.	Deed of Trust dated January 10, 2023, and filed of record with the Brunswick County Register of Deeds at Book: 4959 Page: 1280 on January 10, 2023, granted by Debtor for the benefit of NVR, Inc. ("**NVR**") on certain Entitled Lots within the Thomasboro Property;

c.	Deed of Trust dated February 22, 2023, and filed of record with the Brunswick County Register of Deeds at Book: 4997 Page: 0062 on April 10, 2023, granted by Debtor for the benefit of DEFENDANT EAST DEVELOPMENT on the entirety of the Thomasboro Property[8];

---

[7] The "**Caviness & Cates DOT**" a true and correct copy of which is attached hereto as <u>Exhibit E</u>. The terms of the Caviness & Cates DOT are hereby expressly incorporated into this Complaint as if fully set forth herein.

[8] The "**East Development DOT**" a true and correct copy of which is attached hereto as <u>Exhibit F</u>. The terms of the East Development DOT are hereby expressly incorporated into this Complaint as if fully set forth herein.

d. Deed of Trust dated May 30, 2024, and filed of record with the Brunswick County Register of Deeds on May 30, 2024 at Book: 5184 Page: 1317, granted by Debtor for the benefit of DEFENDANT GREAT SOUTHERN HOMES on certain Entitled Lots within the Thomasboro Property[9];

e. Deed of Trust dated July 25, 2024, and filed of record with the Brunswick County Register of Deeds at Book: 5219 Page: 887 on August 9, 2024, granted by Debtor for the benefit of New Leaf Builders of NC, LLC ("**New Leaf**") on certain Entitled Lots within the Thomasboro Property.

44. On information and belief, each of these five deed-of-trust beneficiaries, including each Subsequent Transferee, had notice of the existence of DIP Lien on the Thomasboro Property prior to consummating their underlying transaction with the Debtor that gave rise to their lien.

45. In addition to granting these liens in violation of the DIP Credit Agreement, the Debtor also defaulted by (a) secretly deeding ownership of a significant portion of the Thomasboro Property to a newly created non-Debtor entity ostensibly with the same ownership as Debtor, DEFENDANT THOMASBORO LANDCO II LLC, and (b) failing to make required payments on the DIP Facility as and when due, including upon its maturity at the end of August 2024.

---

[9] The "**Great Southern Homes DOT**" a true and correct copy of which is attached hereto as <u>Exhibit G</u>. The terms of the Great Southern Homes DOT are hereby expressly incorporated into this Complaint as if fully set forth herein.

**G.** **Debtor Enters Forbearance Agreement with DIP Lender, Admits Defaults and Promises to Deliver Subordination Agreements**

46.     On September 20, 2024, DIP Lender and the Debtor entered into a Forbearance Agreement,[10] wherein DIP Lender agreed to forbear from exercising its rights and remedies against the Debtor in exchange for certain admissions by and deliverables from the Debtor, including the ultimate payoff in full of the DIP Facility on or before October 31, 2024.

47.     In the Forbearance Agreement, the Debtor admitted it was in continuing default of the DIP Credit Agreement due to its grant of the five deeds of trust listed above including the three Subsequent DOTs, its transfer of ownership of part of the Thomasboro Property to Defendant Landco II, and its payment default.  *See* Ex. E, § 1.

48.     Among other deliverables, the Debtor obligated itself in the Forbearance Agreement to provide DIP Lender with (a) a deed of trust representing the DIP Lien on or before September 20, 2024, and (b) subordination agreements, in form and substance satisfactory to DIP Lender, with each of the five recipients of the deeds of trust listed above on or before October 4, 2024.

49.     On September 26, 2024, the Debtor and Defendant Landco II executed a deed of trust in favor of DIP Lender, which was filed of record with the Brunswick County Register of Deeds at Book: 5242 Page: 879 on September 27, 2024.[11]

50.     Following execution of the Forbearance Agreement, DIP Lender provided Debtor with a form of subordination agreement acceptable to DIP Lender, which counsel for Debtor was to deliver to each of the five deed of trust beneficiaries for their consideration and execution.

---

[10] "**Forbearance Agreement**" refers to that certain *Forbearance Agreement* entered into as of September 20, 2024 between Debtor and DIP Lender.  The terms of the Forbearance Agreement, a true and correct copy of which is attached hereto as Exhibit H, are hereby expressly incorporated into this Complaint as if fully set forth herein.

[11] The "**DIP Lender DOT**" a true and correct copy of which is attached hereto as Exhibit I. The terms of the DIP Lender DOT are hereby expressly incorporated into this Complaint as if fully set forth herein.

51.     Two of these beneficiaries – New Leaf and NVR – negotiated and executed forms of subordination agreements that were acceptable to DIP Lender and recorded:

a.  Subordination Agreement dated October 4, 2024, and filed of record with the Brunswick County Register of Deeds at Book: 5249 Page: 944 on October 11, 2024, executed by New Leaf,[12] and

b.  Subordination Agreement dated October 17, 2024, and filed of record with the Brunswick County Register of Deeds at Book: 5255 Page: 865 on October 24, 2024, executed by NVR.[13]

52.     Each of the Subsequent Transferees – Defendants Caviness & Cates, East Development, and Great Southern Homes – have refused to date to execute a subordination agreement in form and substance satisfactory to DIP Lender.

**H.      Debtor's Fraudulent Transfer to East Development, LLC**

53.     While the Debtor's transfer of liens to each of the Subsequent Transfers was an admitted violation of the DIP Credit Agreement (and, in turn, the DIP Financing Order), the transfer of the Subsequent Lien to DEFENDANT EAST DEVELOPMENT (the "**ED Transfer**") was unique and bears special attention.

54.     The other four deed of trust beneficiaries – New Leaf, NVR, and Defendants Caveniss & Cates and Great Southern Homes – are all homebuilders who received their deeds of trust on certain Entitled Lots within the Thomasboro Property in exchange for providing cash to Debtor as earnest money deposits under purchase and sale agreements for those same Entitled Lots.

---

[12] The "**New Leaf SA**" a true and correct copy of which is attached hereto as Exhibit J. The terms of the New Leaf SA are hereby expressly incorporated into this Complaint as if fully set forth herein.

[13] The "**NVR SA**" a true and correct copy of which is attached hereto as Exhibit K. The terms of the NVR SA are hereby expressly incorporated into this Complaint as if fully set forth herein.

55.     On information and belief none of these four beneficiaries is an insider or affiliate of the Debtor.

56.     The same cannot be said regarding East Development and the circumstances underlying the ED Transfer.

57.     East Development is not a homebuilder, and by granting the East Development DOT, Debtor gave East Development a Subsequent Lien on the entirety of the Thomasboro Property, not just on specific Entitled Lots therein.

58.     Moreover, the East Development DOT was not granted to secure an obligation of the Debtor, and Debtor received no direct funding or benefits from East Development in exchange for granting the East Development DOT.

59.     Rather, the East Development DOT was granted to secure a loan of $5 million from East Development to DEFENDANT CRITERIA DEVELOPMENT.

60.     Criteria Development is owned by the Debtor's owner and manager, Marion Uter, and his son, Paul Uter.

61.     Criteria Development was also the only unsecured creditor in the Bankruptcy Case, purportedly owed over $1.2 million which, according to the terms of the Plan, will not be paid until after DIP Lender has been paid in full.

62.     DIP Lender lacks information to confirm whether Criteria Development's unsecured bankruptcy claim remains outstanding or has been repaid, with proceeds of the DIP Facility, the East Development loan or otherwise.

63.     On information and belief, East Development is owned and financed by a consortium of private investors with close ties to the Uters and Criteria Development.

64.     On information and belief, the Uters and some or all of the private investors behind East Development, including without limitation East Development principal/manager Douglas G. Watson, have previously been and/or are currently involved in numerous other projects and financial co-investments.

65.     On information and belief, at various times – including at the time of the ED Transfer – Debtor and Defendants East Development and Criteria Development were all represented by the same counsel.

66.     At all relevant times hereto, Defendants East Development and Criteria Development were and are "affiliates" and "insiders" of the Debtor, as those terms are defined under applicable law.

67.     The Debtor's transfer of the East Development DOT to East Development, granting it a Subsequent Lien on the entirety of the Thomasboro Property, in apparent satisfaction of, or as security for, an obligation Criteria Development owes to East Development, was undertaken with by Debtor with intent to hinder, delay and/or defraud Debtor's other creditors, including DIP Lender.

68.     Furthermore, at the time of the ED Transfer, Debtor was (as it continues to be) insolvent and unable to pay its debts as they become due.

69.     As a result, The ED Transfer was a textbook actual and constructive fraudulent transfer, and should be avoided.

### COUNT I
#### DETERMINATION OF THE VALIDITY, PRIORITY, AND/OR EXTENT OF LIENS, CLAIMS, OR OTHERS INTERESTS IN THE THOMASBORO PROPERTY
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC)**

70.     Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

71.     Pursuant to the DIP Credit Agreement, Debtor agreed to and did grant DIP Lender a DIP Lien in substantially all of its assets, including the entirety of the Thomasboro Property.

72.     On May 16, 2022, the Bankruptcy Court entered the DIP Financing Order, thereby authorizing Debtor to enter into the DIP Credit Agreement, approving all terms thereof, and granting DIP Lender a fully perfected DIP Lien in the entirety of the Thomasboro Property pursuant to applicable federal law, including 11 U.S.C. § 364.

73.     The DIP Financing Order has been final and non-appealable since no later than May 30, 2022.

74.     Pursuant to the explicit terms of the DIP Financing Order, the DIP Lien was "automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law," and therefore it was not necessary for DIP Lender to record a deed of trust, a copy of the DIP Financing Order, or any other document with the Brunswick County Register of Deeds to perfect the DIP Lien or thereafter maintain its perfection, including for purposes of establishing the DIP Lien's priority over liens and security interests in the Thomasboro property subsequently perfected under applicable state law.

75.     Furthermore, none of the validity, priority or extent of DIP Lender's DIP Lien in the Thomasboro Property was extinguished, limited or otherwise impacted by the Debtor's Plan and the Bankruptcy Court's subsequently entered Confirmation Order confirming that Plan.

76.     Debtor gave value in exchange for the DIP Lien, advancing approximately $26 million in new funding to Debtor under the DIP Facility beginning with an initial funding on May 25, 2022.

77.     As a result, since entry of the DIP Financing Order on May 16, 2022 (and in any event no later than the initial funding on May 25, 2022), DIP Lender has had and continues to

have a valid, perfected lien on the entirety of the Thomasboro Property, including all Entitled Lots thereon.

78.    At various dates subsequent thereto, Debtor engaged in the Subsequent Transfers granting liens on and security interests in all or portions of the Thomasboro Property (aka the Subsequent Liens) to Defendants Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC (aka the Subsequent Transferees), including by issuing deeds of trust to each (aka the Subsequent DOTs).

79.    Beginning on or about September 15, 2022 and dates subsequent thereto, the Subsequent DOTs were recorded with the Brunswick County Register of Deeds.  None of the Subsequent DOTs were recorded prior to perfection of the DIP Lien.

80.    Although not necessary for the prior perfection of the DIP Lien to be binding on the Subsequent Transferees, on information and belief, each of the Subsequent Transferees had notice of the existence of DIP Lien on the Thomasboro Property prior to consummating the Subsequent Transfer with the Debtor that gave rise to its Subsequent Lien.

81.    Thus, by operation of applicable law, DIP Lender's DIP Lien on the Thomasboro Property is senior in all respects to all of the Subsequent Liens.  For the avoidance of doubt, this remains true notwithstanding (a) each of the Subsequent DOTs was recorded with the Brunswick County Register of Deeds prior to the DIP Lender DOT being recorded, and (b) the Debtor has transferred a portion of the Thomasboro Property to Defendant Thomasboro Landco II, LLC.

82.    Nevertheless, the absence of documentation recorded with the Brunswick County Register of Deeds that acknowledges the senior priority of the DIP Lien over the Subsequent Liens and defines the relative rights between DIP Lender and the Subsequent Transferees poses substantial and undue risks of complication, confusion, obstruction and/or delay on any future

Case 24-01038    Doc 1    Filed 11/01/24    Entered 11/01/24 14:30:57    Desc Main
Document    Page 16 of 29

enforcement efforts or foreclosure proceedings DIP Lender may be forced to pursue its rights in the Thomasboro Property to satisfy Debtor's obligations under the DIP Facility.

83.     Each of the Subsequent Transferees has refused and/or is not voluntarily willing to enter into recordable documentation by which it acknowledges its Subsequent Lien is subordinate to the DIP Lien and agrees to commercially reasonable terms limiting its ability to interfere with any future enforcement efforts or foreclosure proceeding DIP Lender may be forced to pursue to satisfy Debtor's obligations under the DIP Facility.

84.     Debtor's obligations to DIP Lender under the DIP Facility are (and will continue to be until paid off in full) outstanding allowed superpriority administrative expenses of the estate in the Bankruptcy Case as well as senior secured obligations of Debtor under the terms of the DIP Credit Agreement, DIP Financing Order, Plan and Confirmation Order.

85.     Therefore, the refusal and/or unwillingness of each Subsequent Transferee to voluntarily enter into recordable subordination agreements prevents the fulfillment of Debtor's obligations and the enforcement of DIP Lender's rights and interests under the DIP Loan Documents and Plan, which in turn constitutes a collateral attack on the Bankruptcy Court's DIP Financing Order and Confirmation Order.

86.     Accordingly, to prevent such collateral attack on final orders of the Bankruptcy Court and the integrity of the Bankruptcy Case generally, and to preserve and protect the ability for the Debtor's obligations to DIP Lender under the DIP Loan Documents and Plan to be fulfilled including, if necessary, by DIP Lender enforcing its rights against the Thomasboro Property, DIP Lender is entitled to a judgment (A) declaring the senior priority of the DIP Lien over the Subsequent Liens in the Thomasboro Property and defining the relative rights between DIP Lender and the Subsequent Transferees concerning any efforts or foreclosure proceedings

Case 24-01038    Doc 1    Filed 11/01/24    Entered 11/01/24 14:30:57    Desc Main
Document        Page 17 of 29

by DIP Lender to pursue its rights in the Thomasboro Property to satisfy outstanding administrative expenses in the Bankruptcy Case and senior secured obligations of the Debtor under the DIP Facility, which judgment, subsequent to entry, can be recorded with the Brunswick County Register of Deeds, or (B) in the alternative, compelling each Subsequent Transferee to execute recordable documentation acknowledging the senior priority of the DIP Lien over the Subsequent Liens in the Thomasboro Property and agreeing not to take any actions to oppose, limit, delay or prevent efforts or foreclosure proceedings by DIP Lender to pursue its rights in the Thomasboro Property to satisfy outstanding administrative expenses in the Bankruptcy Case and senior secured obligations of the Debtor under the DIP Facility.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to 28 U.S.C. § 2201, 11 U.S.C. §§ 105, 364, 1123 and 1142 and Rules 3020(d), 7001(1), (2), (7), (8) and (9), and 7070 of the Federal Rules of Bankruptcy Procedure, judgment in its favor and against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC:

A. Finding, concluding, adjudicating and/or declaring that the priority of the DIP Lien in the Thomasboro Property is senior and superior in all respects to the priority of each Subsequent Lien in all or any portion of the Thomasboro Property,

B. Enjoining Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms

of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

C. Enjoining Defendants Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce its rights, liens and interests under the DIP Credit Agreement, DIP Lien and/or DIP Lender DOT against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

D. Enjoining Defendants Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – to notify DIP Lender promptly upon East Development, LLC's receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions,

E.  In the alternative, compelling each of the Subsequent Transferees to enter into recordable documentation acknowledging the subordination as stated in Recital A above and agreeing to the terms and limitations set forth in Recitals C and D above, and

F.  Granting such other and further relief as the Court deems just and proper.

## COUNT II
### ALABAMA UNIFORM VOIDABLE TRANSACTIONS ACT (ALA. CODE § 8-9B-1, ET SEQ.) AND/OR UNIFORM VOIDABLE TRANSACTIONS ACT (N.C. GEN. STAT. ANN. § 39-23.1, ET SEQ.) (ACTUAL FRAUD)
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, Criteria Development, LLC and East Development, LLC)**

87.  Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

88.  According to its Voluntary Chapter 11 Petition commencing the Bankruptcy Case (Doc. No. 1), Debtor is an organization with its principal place of business and its chief executive office located in the Southern District of Alabama, while its principal assets (including the Thomasboro Property) are located in North Carolina.

89.  Accordingly, causes of action seeking to void transactions concerning liens and security interests granted by the Debtor in the Thomasboro Property are governed by the Uniform Voidable Transactions Act as adopted in Alabama or North Carolina.

90.  At all times relevant hereto, and with respect to the ED Transfer, DIP Lender was a creditor of the Debtor whose claim arose before the ED Transfer, and who continues to be a creditor of the Debtor.

91.  The ED Transfer occurred less than four years prior to the commencement of this action.

92.  The ED Transfer was made by or on behalf of the Debtor with the actual intent to hinder, delay, or defraud its creditors.

93.     Accordingly, the ED Transfer is voidable as to DIP Lender pursuant to Ala. Code § 8-9B-5(a)(1) and/or N.C. Gen. Stat. § 39-23.4(a)(1), and DIP Lender is entitled to a judgment voiding the ED Transfer to the extent necessary to satisfy DIP Lender's claim against Debtor.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to Ala. Code § 8-9B-8(a) and/or N.C. Gen. Stat. § 39-23.7(a), judgment in its favor and against Defendants Thomasboro Landco, LLC, Criteria Development, LLC and East Development, LLC:

A.  Finding, concluding, adjudicating and/or declaring that the ED Transfer was fraudulent and void,

B.  Finding, concluding, adjudicating and/or declaring that the East Development DOT is void and/or inferior in priority to the DIP Lien,

C.  Enjoining Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC and Criteria Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

D.  Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from

contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce its rights, liens and interests under the DIP Credit Agreement, DIP Lien and/or DIP Lender DOT against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

E.  Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – to notify DIP Lender promptly upon East Development, LLC's receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions, and

F.  Granting such other and further relief as the Court deems just and proper.

**COUNT III**
**ALABAMA UNIFORM VOIDABLE TRANSACTIONS ACT (ALA. CODE § 8-9B-1, ET SEQ.)**
**AND/OR UNIFORM VOIDABLE TRANSACTIONS ACT (N.C. GEN. STAT. ANN. § 39-23.1, ET SEQ.)**
**(CONSTRUCTIVE FRAUD)**
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC,**
**Criteria Development, LLC and East Development, LLC)**

94.  Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

95.  At all times relevant hereto, and with respect to the ED Transfer, DIP Lender was a creditor of the Debtor whose claim arose before the ED Transfer, and who continues to be a creditor of the Debtor.

96.     The ED Transfer occurred while Debtor was insolvent, or the ED Transfer otherwise rendered Debtor insolvent.

97.     The ED Transfer was to an insider of the Debtor, and the Debtor received no value from East Development for the ED Transfer or otherwise received less than reasonably equivalent value.

98.     At the time of the ED Transfer, the Debtor was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

99.     At the time of the ED Transfer, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

100.    Accordingly, the ED Transfer is voidable as to DIP Lender pursuant to Ala. Code § 8-9B-5(a)(2) and/or N.C. Gen. Stat. § 39-23.4(a)(2), and DIP Lender is entitled to a judgment voiding the ED Transfer to the extent necessary to satisfy DIP Lender's claim against Debtor.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to Ala. Code § 8-9B-8(a) and/or N.C. Gen. Stat. § 39-23.7(a), judgment in its favor and against Defendants Thomasboro Landco, LLC, Criteria Development, LLC and East Development, LLC:

A.  Finding, concluding, adjudicating and/or declaring that the ED Transfer was fraudulent and void,

B.  Finding, concluding, adjudicating and/or declaring that the East Development DOT is void and/or inferior in priority to the DIP Lien,

C.  Enjoining Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC and Criteria Development, LLC – unless and until all obligations due and owing (or that

become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

D. Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce its rights, liens and interests under the DIP Credit Agreement, DIP Lien and/or DIP Lender DOT against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

E. Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – to notify DIP Lender promptly upon East Development, LLC's receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds

over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions, and

F. Granting such other and further relief as the Court deems just and proper.

**COUNT IV**
**EQUITABLE SUBROGATION**
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC,**
**Caviness & Cates Building and Development Company of Greenville,**
**Great Southern Homes, Inc., and East Development, LLC)**

101.    Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

102.    Prior to commencement of the Bankruptcy Case, the Thomasboro Property was encumbered by a recorded deed of trust issued by Debtor for the benefit of the Senior Lenders, providing the Senior Lenders with a first priority liens and security interests in the Thomasboro Property (collectively, the "**Senior Lender Liens**") to secure the Debtor's payment and performance under a $13 million Promissory Note given by Debtor to Senior Lenders on or about June 24, 2021.

103.    On May 25, 2022, the Bankruptcy Court entered the DIP Financing Order, which (among other things) granted DIP Lender the DIP Lien in the Thomasboro Property, which DIP Lien was automatically perfected without the need to comply with any state law recording requirements, and which was senior in priority over all other existing or subsequent encumbrances on the Thomasboro Property, except for the Senior Lender Liens and certain easements which remained Senior to the DIP Lien.

104.    As evidenced by the terms of the DIP Credit Agreement and DIP Financing Order, the payoff in full of Debtors' indebtedness to the Senior Lenders and the release of the Senior Lender Liens were express conditions to Debtor and DIP Lender entering into the DIP Credit Agreement and consummating the DIP Financing.

105. On or about May 25, 2022, following entry of the DIP Financing Order, DIP Lender in fact advanced funds under the DIP Facility directly to the Senior Lenders – specifically $12,391,680.83 – for the purpose of repaying in full the Debtor's indebtedness to the Senior Lenders and causing the release of the Senior Lender Liens on the Thomasboro Property.

106. On or about May 25, 2022, the Debtor's indebtedness to Senior Lenders in fact was fully and finally satisfied upon, and the Senior Lenders caused the Senior Lender Liens on the Thomasboro Property to be released as a direct consequence of, the Senior Lenders' receipt of DIP Facility funds paid directly to the Senior Lenders by DIP Lender.

107. This payment to the Senior Lender is one that, in equity and good conscience, should have been discharged by the Debtor as the party primarily liable for said payment.

108. Accordingly, if and to the extent the DIP Lien is not found, concluded and declared in connection with prior counts in this Complaint to be senior in priority to the East Development DOT, the Caviness & Cates DOT and/or the Great Southern Homes DOT, then DIP Lender is entitled to be subrogated to the Senior Lenders' rights, remedies, and securities as against the Debtor including the benefits of the Senior Lender Liens in the Thomasboro Property.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendants Thomasboro Landco, LLC, Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC:

A. Finding, concluding, adjudicating and/or declaring that DIP Lender is entitled to be and is subrogated to the Senior Lenders' rights, remedies, and securities as against the Debtor,

B. Finding, concluding, adjudicating and/or declaring that DIP Lender is entitled to the benefit of the Senior Lender Liens in the Thomasboro Property and all rights and

remedies formerly held by the Senior Lenders with respect thereto, notwithstanding the prior release of such liens and recording of documentation to that effect,

C. Finding, concluding, adjudicating and/or declaring that the Senior Lender Liens in the Thomasboro Property have priority over all subsequently granted and/or recorded liens and security interests in the Thomasboro Property held by Defendants Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC,

D. Enjoining Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured through equitable subrogation by the Senior Lender Liens have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) free and clear of the Senior Lender Liens,

E. Enjoining Defendants Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured through equitable subrogation by the Senior Lender Liens have been indefeasibly paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce any rights, liens and interests of Senior Lenders to which it has become

subrogated (including the Senior Lender Liens) against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

F.  Enjoining Defendants Caviness & Cates Building and Development Company of Greenville, Great Southern Homes, Inc., and East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured through equitable subrogation by the Senior Lender Liens have been indefeasibly paid in full – to notify DIP Lender promptly upon their receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions, and

G.  Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this the 1st day of November, 2024.

/s/ *Jeremy C. Hollembeak*
_____
Jeremy C. Hollembeak
(admitted *pro hac vice*)
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 636-8317
jhollembeak@bairdholm.com

-and-

Mark P. Williams
NORMAN, WOOD, KENDRICK & TURNER
Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL  35205
(205) 328-6643

*Attorneys for Plaintiff DIP Lender Legalist, Inc.*