UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| THOMASBORO LANDCO, LLC, | ) | |
| | ) | Case No. 22-10260-HAC-11 |
| Debtor. | ) | |
| | ) | |
| | | |
| LEGALIST, INC., on behalf of itself and certain investment fund(s) for which it serves as investment advisor, | ) ) ) ) | |
| Plaintiff, | ) | Adv. Proc. No. 24-1038-HAC |
| v. | ) ) | |
| THOMASBORO LANDCO, LLC, ET AL. | ) ) ) | |
| Defendants. | ) | |

## MOTION FOR LEAVE TO AMEND ADVERSARY COMPLAINT

PLAINTIFF LEGALIST, INC., on behalf of itself and certain investment fund(s) for which it serves as investment advisor (collectively, "**Legalist**" or "**DIP Lender**"), pursuant to Federal Rule of Civil Procedure 15 and Civil L.R. 15, respectfully moves the Court for an order granting Legalist leave to file an amended Adversary Complaint, and in support of such request respectfully states as follows:

### BACKGROUND

1. DIP Lender filed the instant adversary proceeding to, among other things, determine the validity, extent, and priority of liens and encumbrances upon the Thomasboro Property[1].

---

[1] Capitalized terms not defined herein shall take the meaning they have in the Adversary Complaint [ECF No. 1] ("**Original Complaint**").

2. As the Court may recall, without DIP Lender's prior knowledge or consent, Debtor secretly transferred almost all of DIP Lender's real estate collateral (approximately 1000 of 1138 total acres) to Thomasboro Landco II LLC ("**Thomasboro II**") for no apparent consideration (the "**Thomasboro II Transfer**"). When DIP Lender uncovered this transfer more than a year later and asked for an explanation, Debtor repeatedly represented in response that ***"[t]he transfer to Thomasboro II was done to deal with tax issues and is owned by the same owners of [Debtor]."*** See Sept. 11, 2024 Email from Edward Peterson (a true and correct copy of which is attached hereto as **Exhibit A**) (emphasis added).

3. As a result, DIP Lender demanded – and Debtor agreed – that Thomasboro II be a signatory to the September 20, 2024 Forbearance Agreement (Exhibit H to Original Complaint, the "**Forbearance Agreement**") and co-execute with Debtor a deed of trust for the benefit of DIP Lender evidencing the DIP Lien on the entirety of the Thomasboro Property (Exhibit I to Original Complaint, the "**Legalist DOT**"). Accordingly, both the Forbearance Agreement and Legalist DOT contain representations by Debtor concerning its "common ownership" with Thomasboro II and the purported tax purpose of the transfer of real estate between them, and both agreements are executed by J. Marion Uter on behalf of Thomasboro II:

- Forbearance Agreement § 10.D (representation and warranty that "*Debtor and [Thomasboro II] are ... owned by the same members*" and "*all of the Land is under the common control of Debtor*"):

- Forbearance Agreement signature page (J. Marion Uter signing on behalf of Debtor "*and its affiliate under common control Thomasboro Landco II LLC*");

- Legalist DOT, fifth WHEREAS clause at pg. 2 (although ownership of Land was split "*for tax purposes*" between Debtor and Thomasboro II, "*all of the Land is under common control of [Debtor]*");

- Legalist DOT, seventh WHEREAS clause at pg. 2-3 ("[Thomasboro II] has agreed all to execute and deliver this Deed of Trust to more formally memorialize the lien on land titled in [Thomasboro II] in favor of [DIP Lender] that was created through the DIP Loan Order with [Debtor] owned all of the Land"); and

- Legalist DOT signature page (J. Marion Uter signing as "*Manager*" of Thomasboro II).

4. When these documents were executed in September 2024, DIP Lender had no reason to doubt that J. Marion Uter had the authority he represented himself to have to execute them on behalf of Thomasboro II. In fact, just weeks prior, J. Marion Uter had executed a warranty deed on behalf of Thomasboro II as its "*Manager*." *See* Special Warranty Deed granted by Thomasboro II, which was filed of record with the Brunswick County Register of Deeds at Book: 5219 Page: 881 on August 9, 2024 (a true and correct copy of which is attached hereto as **Exhibit B**). As a result, when Debtor failed to perform under the Forbearance Agreement – forcing DIP Lender to commence this Adversary Proceeding to obtain the ability to monetize its real estate collateral through foreclosure if necessary – DIP Lender had no reason to believe the validity of the Legalist DOT would be disputed. Therefore, DIP Lender had no reason to assert claims in the Original Complaint seeking to bolster the validity of the Legalist DOT, to avoid the Thomasboro II Transfer as actually and constructively fraudulent, or to the Defendants and Mr. Uter liable for conspiring to defraud DIP Lender through the ruse that was the Forbearance Agreement.

5. That all changed starting on December 10, 2024. That day, in its answer to DIP Lender's Original Complaint filed jointly with East Development, Thomasboro II <u>denied</u> both (a) that Thomasboro II is under common ownership with the Debtor and (b) that the Legalist DOT was "validly executed, properly authorized, or constitutes a valid and binding obligation of Thomasboro Landco II." *See Answer To Complaint*, Adv. No. 24-1038 (Doc. No. 20), at ¶¶ 25, 27. Since this surprising revelation, Debtor has repeatedly ignored requests by DIP Lender to refute these denials. Meanwhile, all remaining Defendants have used (and continue to use) the alleged invalidity of the Legalist DOT, together with East Development's refusal to provide a subordination agreement acknowledging the senior priority of DIP Lender's DIP Lien (including

3

the Legalist DOT) over East Development's junior deed of trust, to try and leverage a favorable settlement of the adversary proceeding and force DIP Lender to enter into another forbearance agreement extending months into the future.

6. Since December, it has become clear to DIP Lender that these developments are not isolated reactions by true third-party creditors caught up in a bankruptcy run amok. Rather, available evidence strongly suggests these developments are the latest manifestation of a premeditated conspiracy among overlapping insider parties to prevent and delay DIP Lender from exercising the collateral rights given by order of this Court for as long as possible. Accordingly, Debtor brings this motion for leave to amend the Original Complaint so that all fraudulent transactions and misrepresentations by the Defendants and J. Marion Uter in furtherance of this conspiracy are properly raised for adjudication by the Court in this Adversary Proceeding.

7. Accordingly, DIP Lender seeks leave to amend the Original Complaint to add claims including (among others) a request for judgment declaring the Legalist DOT is valid and binding on Thomasboro II. The evidence will show that J. Marion Uter had the requisite authority to execute the Legalist DOT on behalf of Thomasboro II. For example, in addition to Exhibit B above, the Court should consider the Limited Liability Company Annual Report submitted for Thomasboro II to the North Carolina Secretary of State on January 24, 2025 (a true and correct copy of which is attached hereto as **Exhibit C**). Tellingly, that report was certified, executed and submitted *by J. Marion Uter*. Further in response to the report's required listing of all "Company Officials", Mr. Uter listed only one – *himself*. Clearly, Mr. Uter is a member-owner and manager of Thomasboro II with authority to sign documents on Thomasboro II's behalf.

4

Case 24-01038    Doc 39    Filed 02/14/25    Entered 02/14/25 16:03:51    Desc Main
Document    Page 4 of 9

8.      If Mr. Uter lacked the *actual* authority to execute the Legalist DOT – an allegation DIP Lender does not concede to be true – it could only be the result of Thomasboro II's owner-members (*i.e.* East Development and Mr. Uter, himself) refusing to take the requisite corporate actions necessary to give Mr. Uter's such authority.  No such refusal could plausibly be explained by mistake or inadvertence.  East Development and Thomasboro II knew in real time the representations Mr. Uter was making to DIP Lender about his authority to bind Thomasboro II.  For example, at all relevant times to this proceeding, East Development and Thomasboro II have been – *and continue to be* – represented by the same law firm as Debtor and J. Marion Uter for corporate and transactional purposes.  Under the circumstances, if the member-owners of Thomasboro II did refuse to formally authorize Mr. Uter to execute the Legalist DOT on Thomasboro II's behalf, then such refusal (b) could only have been an intentional act to give themselves the ability to cause further delay to DIP Lender's collection efforts, and (a) in any event should not render the Legalist DOT unenforceable against Thomasboro II because it allowed Mr. Uter to cloak himself with the apparent authority to act on Thomasboro II's behalf and induce DIP Lender's detrimental reliance on that authority.

9.      Given the possibility, however remote, that the Legalist DOT is determined to be ineffective against Thomasboro II, it is also imperative for Legalist to seek to unwind the fraudulent transfer of Thomasboro Property so that all such property is returned to Debtor (against whom the Legalist DOT is indisputably effective).  As the Court may recall, in February 2023, Debtor issued a deed of trust to East Development to secure a purported $5 million loan made exclusively to three non-debtors, including the Debtor's two owners, (1) J. Marion Uter and (2) Stephen Stroud, and (3) Defendant Criteria Development LLC – the Debtor's only unsecured creditor in the bankruptcy case which itself is owned and controlled by Mr. Uter and

5

his son.[2]

10. Although it remains outstanding to this day, East Development's $5 million loan to Uter, Stroud and Criteria matured by its terms just 60 days after it was issued. Four (4) days before it came due, on April 26, 2023, J. Marion Uter and some or all of the member-owners of East Development formed Thomasboro II. That same day almost 1000 acres out of 1138 acres in total of Debtor's real estate holdings were transferred for no apparent consideration to Thomasboro II by warranty deed. Notably, that warranty deed was not recorded with the Brunswick County, NC Register of Deeds until November 27, 2023. And in any event, Debtor never notified DIP Lender of these transfers before or after they happened (in violation of its obligations under the DIP Credit Agreement and DIP Order).

11. Thus, on information and belief, the Thomasboro II Transfer – executed on the eve of a total default under the $5 million East Development Note – was intended by all Defendants to enhance East Development's security position and likelihood of ultimate repayment on the note out of DIP Lender's collateral before DIP Lender had been paid in full. Accordingly, DIP Lender seeks to amend the Original Complaint to add claims to avoid and unwind the Thomasboro II Transfer as actually and constructively fraudulent.

### RELIEF REQUESTED

12. By this Motion, DIP Lender seeks leave to file an amended complaint substantially in the form attached hereto as **Exhibit D** (the "**Amended Complaint**"). The Amended Complaint (a) drops those defendant parties that have previously been dismissed by plaintiff, (b) adds as a new defendant J. Marion Uter, and (c) adds counts seeking (i) a

---

[2] Based on the incomplete financial records made available to DIP Lender to date, the $5 million purportedly loaned by East Development, along with all proceeds Debtor borrowed from DIP Lender under the DIP Loan, were deposited into an account in the name of Defendant Criteria Development LLC, commingled with funds of other sources, and used to fund development of numerous projects other than the Debtor's project.

6

declaratory judgment finding that J. Marion Uter possessed the actual and/or apparent authority to bind Thomasboro II to the Legalist DOT, (ii) a judgment that the Thomasboro II Transfer was fraudulent and void, (iii) that Debtor is in breach of the Forbearance Agreement, (iv) that J. Marion Uter fraudulently induced DIP Lender into entering into the Forbearance Agreement, (v) that J. Marion Uter made negligent misrepresentations causing DIP Lender to enter into the Forbearance Agreement, (vi) that Debtor, Thomasboro II, and J. Marion Uter entered into a civil conspiracy to defraud DIP Lender, (vii) and that J. Marion Uter filed a false lien or encumbrance in violation of N.C. Gen. Stat. Ann. § 75-16. A redline of Exhibit D against the Original Complaint is attached hereto as **Exhibit E**.

## BASIS FOR RELIEF AND MEMORANDUM OF LAW

13. Thomasboro II's surprising denial of Mr. Uter's authority to act on its behalf has given rise to numerous claims which DIP Lender was not aware of at the time of filing the Original Complaint or otherwise had no reason at that time to pursue. As a result, DIP Lender now seeks leave of Court to amend the Original Complaint to include allegations and claims that have been recently discovered or otherwise taken on new relevance in light of developments beyond plaintiff's control.

14. The Federal Rules of Civil Procedure allow for the amendment of pleadings "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). On at least two separate occasions, the undersigned counsel for DIP Lender emailed all counsel of record sharing drafts of the proposed amended complaint, advising all parties of DIP Lender's intention to file this motion for leave, and asking for their consent to file an amended complaint. DIP Lender did not receive a response from any party addressing DIP Lender's request.

15. "When a party files a motion for leave to amend a pleading, '[t]he court should freely give leave when justice so requires.'" *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 304 (N.D. Ala. 2018) (alteration in original) (citing Fed. R. Civ. P. 15(a)(2)). "This policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).

16. No substantial reason exists to deny DIP Lender leave to amend its Original Complaint.

WHEREFORE, DIP Lender respectfully requests the Court enter an order granting DIP Lender (i) leave to amend its Original Complaint by filing an amended complaint substantially in the form attached to this Motion as Exhibit D, and (ii) such other and further relief as the Court deems equitable and just.

Dated: February 14, 2025
Omaha, Nebraska

/s/ *Jeremy C. Hollembeak*
Jeremy C. Hollembeak
James T. Schmidt
(admitted *pro hac vice*)
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 636-8317
jhollembeak@bairdholm.com
jschmidt@bairdholm.com

-and-

Mark P. Williams
NORMAN, WOOD, KENDRICK & TURNER
Ridge Park Place, Suite 3000
1130 22nd Street South

8

Case 24-01038    Doc 39    Filed 02/14/25    Entered 02/14/25 16:03:51    Desc Main
Document    Page 8 of 9

Birmingham, AL  35205
(205) 328-6643

*Attorneys for Plaintiff Legalist, Inc.*