## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **THOMASBORO LANDCO, LLC,** | ) | |
| | ) | **Case No. 22-10260-HAC-11** |
| Debtor. | ) | |
| ———————————————— | ) | |
| | | |
| **LEGALIST, INC.,** on behalf of itself and | ) | |
| certain investment fund(s) for which it | ) | |
| serves as investment advisor, | ) | |
| | ) | |
| Plaintiff, | ) | **Adv. Proc. No. 24-01038** |
| v. | ) | |
| | ) | |
| **THOMASBORO LANDCO, LLC,** | ) | |
| **THOMASBORO LANDCO II LLC** | ) | |
| **CRITERIA DEVLOPMENT, LLC,** | ) | |
| **EAST DEVELOPMENT, LLC,** and | ) | |
| **J. MARION UTER,** | ) | **FIRST AMENDED** |
| | ) | **ADVERSARY COMPLAINT** |
| Defendants. | ) | |
| ———————————————— | ) | |

PLAINTIFF LEGALIST, INC., on behalf of itself and certain investment fund(s) for which it serves as investment advisor (collectively, "**Legalist**" or "**DIP Lender**"), by and through its undersigned attorneys, hereby submits this first amended adversary complaint (the "**Complaint**") to determine the validity, priority and/or extent of, and to avoid as a fraudulent transfer, a lien and security interest (as described more fully below, the "**East Development Lien**") held by DEFENDANT EAST DEVELOPMENT, LLC in all or certain portions of real property presently owned by DEFENDANT THOMASBORO LANDCO, LLC (*i.e.*, the above-captioned "**Debtor**") and non-Debtor DEFENDANT THOMASBORO LANDCO II LLC (as described more fully below, the "**Thomasboro Property**"), relative to security interest and lien

1

EXHIBIT D

of DIP Lender in the same Thomasboro Property (as described more fully below, the "**DIP Lien**").

<u>**NATURE OF ACTION**</u>

1.      The East Development Lien was conveyed by Debtor to DEFENDANT EAST DEVELOPMENT, LLC <u>after</u> DIP Lender obtained its valid and perfected DIP Lien by final order of the United States Bankruptcy Court for the Southern District of Alabama (the "**Bankruptcy Court**") in May 2022. Therefore, the DIP Lien and DIP Lender's attendant rights vis-à-vis the Thomasboro Property are senior in priority and otherwise superior to the East Development Lien and the attendant rights of DEFENDANT EAST DEVELOPMENT, LLC. Nevertheless, DEFENDANT EAST DEVELOPMENT, LLC (unlike other similarly situated subsequent lienholders) has refused to enter into recordable documentation acknowledging that the East Development Lien in the Thomasboro Property is subordinate to the DIP Lien and agreeing not to interfere with imminent efforts by DIP Lender to enforce the DIP Lien and foreclose on the Thomasboro Property.

2.      Additionally, the East Development Lien was conveyed by Debtor, when it was indisputably insolvent, to secure a $5 million loan borrowed by a non-debtor – DEFENDANT CRITERIA DEVLOPMENT, LLC – the proceeds of which, on information and belief, were used for the benefit of the Debtor's owners and affiliated/insider investors in connection with costs incurred on DEFENDANT CRITERIA DEVLOPMENT, LLC's other (i.e. non-Debtor) development projects and/or various personal expenses of its members, managers and/or employees.

3.      Subsequent to its grant of the East Development Lien, and while still insolvent, Debtor conveyed a significant portion of the Thomasboro Property to Debtor's insider,

2

Case 24-01038   Doc 39-4   Filed 02/14/25   Entered 02/14/25 16:03:51   Desc Exhibit
D - Legalist - Thomasboro - First Amended Adversary Complaint   Page 2 of 46

DEFENDANT THOMASBORO LANDCO II LLC by warranty deed. Upon inquiry by Legalist, Debtor has consistently represented and warranted that DEFENDANT THOMASBORO LANDCO II LLC is under common control with Debtor, that the transfer of Thomasboro Property to DEFENDANT THOMASBORO LANDCO II LLC was made solely for tax purposes, and that the Debtor's 50% owner and manager, DEFENDANT J. MARION UTER, is authorized to execute binding agreements and convey interests in the Thomasboro Property on behalf of DEFENDANT THOMASBORO LANDCO II LLC. To Legalist's surprise, however, in its answer to the Original Complaint[1], DEFENDANT THOMASBORO LANDCO II LLC *denied* that it is under common control with Debtor, and *denied* that DEFENDANT J. MARION UTER possessed the authority to bind it to a deed of trust for the benefit of Legalist previously executed on its behalf by Mr. Uter and recorded in the official land records in North Carolina.

4. Accordingly, DIP Lender seeks a judgment declaring its superior rights in the entirety of the Thomasboro Property, including the senior priority of the DIP Lien over the East Development Lien, and avoiding the East Development Lien as both an actual and constructive fraudulent transfer.

5. Additionally, in the event that DEFENDANT J. MARION UTER did not have the actual authority to bind DEFENDANT THOMASBORO LANDCO II LLC as more fully set forth herein,[2] Legalist seeks a judgment avoiding the Debtor's transfer of any and all Thomasboro Property to DEFENDANT THOMASBORO LANDCO II LLC as both an actual

---

[1] **"Original Complaint"** refers to that certain *Adversary Complaint* filed herein on November 1, 2024. (Docket Number 1).

[2] For the avoidance of doubt, as of the filing hereof, Defendants have refused Legalist's repeated requests for evidence proving or disproving that DEFENDANT J. MARION UTER lacked the requisite authority to bind DEFENDANT THOMASBORO LANDCO II LLC, and therefore Legalist is making such allegation solely on information and belief and in full reservation of its rights in this and/or other future civil or criminal proceedings to take the position, based on evidence available to it at such time, the that DEFENDANT J. MARION UTER possessed the requisite actual and/or apparent authority to bind DEFENDANT THOMASBORO LANDCO II LLC.

3

Case 24-01038   Doc 39-4   Filed 02/14/25   Entered 02/14/25 16:03:51   Desc Exhibit
D - Legalist - Thomasboro - First Amended Adversary Complaint   Page 3 of 46

and constructive fraudulent transfer and a judgment awarding Legalist damages (including treble damages available under applicable law) resulting from DEFENDANT J. MARION UTER'S fraudulent misrepresentations and false lien filing, and the conspiracy among all Defendants to effectuate that fraudulent scheme.

<u>**JURISDICTION AND VENUE**</u>

6. This adversary proceeding arises in and/or is related to *In re Thomasboro Landco, LLC*, Chapter 11 Case No. 22-10260 pending in this district before the Bankruptcy Court (the above-captioned "**Bankruptcy Case**").

7. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

9. This is a core proceeding under 28 U.S.C. § 157(b).

10. Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

<u>**PARTIES**</u>

11. PLAINTIFF LEGALIST (aka "**DIP Lender**") is a Delaware corporation.

12. DEFENDANT THOMASBORO LANDCO, LLC (aka the "**Debtor**" in the above-captioned Bankruptcy Case) is a North Carolina limited liability company with its principal place of business and its chief executive office located in the Southern District of Alabama.

13. DEFENDANT THOMASBORO LANDCO II LLC ("**Thomasboro II**") is a North Carolina limited liability company with its principal place of business and its chief executive office located in the Southern District of Alabama.

4

Case 24-01038   Doc 39-4   Filed 02/14/25   Entered 02/14/25 16:03:51   Desc Exhibit
D - Legalist - Thomasboro - First Amended Adversary Complaint   Page 4 of 46

14.     DEFENDANT CRITERIA DEVELOPMENT, LLC ("**Criteria Development**"), is an Alabama limited liability company.

15.     DEFENDANT EAST DEVELOPMENT, LLC ("**East Development**") is a North Carolina limited liability company.

16.     DEFENDANT J. MARION UTER ("**Uter**") is an individual residing in, on information and belief, the State of Florida.

<span style="font-variant:small-caps">**BACKGROUND**</span>

**A.      General Debtor and Bankruptcy Case Background**

17.     On February 11, 2022 (the "**Petition Date**"), the Debtor filed with the Bankruptcy Court a voluntary Chapter 11 petition commencing the Bankruptcy Case.

18.     At all relevant times, the Debtor's membership interests have been and continue to be owned 50% by Defendant J. Marion Uter, and 50% by E. Stephen Stroud.  *See* Bankruptcy Case Doc. No. 14.

19.     At all relevant times, Defendant J. Marion Uter, has been and continues to be the manager of Debtor.  *See* Bankruptcy Case Doc. No. 14.

20.     The Debtor's principal asset is 1,137.4 acres of land located in Brunswick County, North Carolina (aka the "**Thomasboro Property**") comprising approximately 2,500 entitled residential lots (the "**Entitled Lots**").

**B.      Senior Lender Liens**

21.     Prior to the Petition Date, the Debtor had acquired the Thomasboro Property with a purchase money financing loan provided by a group of lenders (the "**Senior Lenders**").

22.     In exchange for the loan, on or about June 24, 2021, Debtor issued the Senior Lenders a $13 million promissory note and a deed of trust which, once recorded, provided the Senior Lenders with first priority liens and security interests in the Thomasboro Property (collectively, the "**Senior Lender Liens**") to secure the Debtor's payment and performance under the Promissory Note.

23.     It was Debtor's inability to timely pay the Senior Lenders under the terms of the promissory note that led to its filing for bankruptcy.

**C.     Bankruptcy Court Approves DIP Facility and Terms of DIP Credit Agreement**

24.     On April 8, 2022, the Debtor filed the DIP Financing Motion[3] by which Debtor sought Bankruptcy Court authority to borrow from DIP Lender approximately $26 million in new money under a 24-month multi-draw debtor-in-possession financing facility (the "**DIP Facility**").

25.     The DIP Facility is governed by the terms and conditions of the DIP Credit Agreement,[4] pursuant to which the Debtor agreed, subject to Bankruptcy Court approval, to grant DIP Lender security interests and liens (as defined therein, the "**DIP Liens**") on substantially all Debtor assets (as defined therein, the "**DIP Collateral**"), to secure Debtor's payment and performance of all obligations due and owing to DIP Lender thereunder (as defined therein, the "**DIP Obligations**").

26.     Describing the DIP Liens in the DIP Financing Motion, the Debtor clearly stated on the first page thereof "[t]he liens proposed to be granted would be senior liens <u>on all property</u>

---

[3] "**DIP Financing Motion**" refers to that certain *Debtor's Motion For Final Order Authorizing The Debtor To Obtain Postpetition Financing And Grant Senior Liens And Superpriority Administrative Expense* (Docket Number 51 in the Bankruptcy Case).

[4] "**DIP Credit Agreement**" refers to the final executed version of that certain *Debtor-In-Possession Term Loan Credit Agreement* dated as of May 25, 2022 entered into among Debtor and DIP Lender.  The terms of the DIP Credit Agreement, a true and correct copy of which is attached hereto as <u>Exhibit A</u>, are hereby expressly incorporated into this Complaint as if fully set forth herein.

of the Debtor" and "be deemed perfected <u>without the need for any further filings</u>" (emphasis added).

27.    On May 16, 2022, the Bankruptcy Court entered the DIP Financing Order,[5] granting the DIP Financing Motion on a final basis.

28.    Among other things, the DIP Financing Order ordered, pursuant to 11 U.S.C. §§ 364(c) and (d), that:

> The DIP Lender holds security interests in and liens on all DIP Collateral … which the Debtor has (to the extent of its right title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged and set over and unto the DIP Lender, and which have been automatically perfected *notwithstanding any notice or recordance requirements of non-bankruptcy law* (collectively, the "DIP Liens") ….

*See* Ex. B, ¶ 9 (emphasis added).

29.    As a result, consistent with the clear intentions of the parties and the Bankruptcy Court, since May 16, 2022, DIP Lender has had and continues to have a valid, perfected DIP Lien in the entirety of the Thomasboro Property, including all Entitled Lots thereon.

30.    In the DIP Financing Order, the Bankruptcy Court ordered that it "has and shall retain jurisdiction to enforce this [DIP Financing Order], including to hear any motion or application by … DIP Lender related hereto…." *See* Ex. B, ¶ 25.

31.    This Complaint, and the relief DIP Lender requests herein, falls within the scope of actions for which the Bankruptcy Court retained jurisdiction in the DIP Financing Order.

---

[5] "**DIP Financing Order**" refers to that certain *Final Order Authorizing Debtor-In-Possession Financing* (Docket Number 97 in the Bankruptcy Case). The terms of the DIP Financing Order, a true and correct copy of which is attached hereto as <u>Exhibit B</u>, are hereby expressly incorporated into this Complaint as if fully set forth herein.

**D.    DIP Lender Advances $26 Million Under DIP Facility to Fund Payoff of Senior Lenders and Development of Thomasboro Property**

32.    On May 25, 2022, as explicitly contemplated in the DIP Financing Order and DIP Loan Documents, DIP Lender advanced $12,391,680.83 under the DIP Facility in the form of a direct payment to the Senior Lenders in satisfaction of their secured claims. *See* Ex. B, ¶ 6; Ex. A, § 2.02(i).

33.    Documentation evidencing the payoff of all amounts owed to Senior Lenders that were secured by their Senior Lender Liens on the Thomasboro Property has been recorded with the Register of Deeds of Brunswick County, North Carolina.

34.    Thereafter, between June 16, 2022, and June 5, 2023, DIP Lender funded twelve draw requests by the Debtor under the DIP Facility, advancing an additional $13,552,989.39 in total directly to the Debtor to fund development of the Thomasboro Property.[6]

35.    Following the advance made by DIP Lender on June 5, 2023, substantially all of the $26 million of new funding DIP Lender agreed to make available under the DIP Facility had been withdrawn, and the DIP Facility has remained fully extended and outstanding since then.

**E.    The Debtor's Plan is Confirmed**

36.    On May 31, 2022, the Debtor filed its Chapter 11 Plan.[7]

37.    The Plan provided (among other things) that (a) any and all amounts owed or to be owed by the Debtor to DIP Lender under the DIP Facility (all such amounts defined therein as the "**DIP Loan Claims**") constituted superpriority expense claims under 11 U.S.C. § 507(a)(1), (b) DIP Loan Claims were classified as a standalone unimpaired class (Class 3), (c) Debtor "shall

---

[6] For the avoidance of doubt, DIP Lender makes no admissions herein regarding the Debtor's actual use of funds it advanced to the Debtor under the DIP Facility. DIP Lender reserves all rights.

[7] "**Plan**" refers to that certain *First Amended Plan of Reorganization* (Docket Number 106 in the Bankruptcy Case). The terms of the Plan, a true and correct copy of which is attached hereto as Exhibit C, are hereby expressly incorporated into this Complaint as if fully set forth herein.

pay the DIP Loan Claims in full in accordance with the DIP Loan Documents" the terms of which "<u>shall</u> remain in full force and effect," and (d) "<u>DIP Lender shall retain all liens and security interests in the Collateral provided for under the DIP Loan Documents and DIP Financing Order</u>." *See* Ex. C, §§ 3.03 and 5.05 (emphasis added).

38.    On July 21, 2024, the Court entered the Confirmation Order[8] confirming the Plan.

39.    In the Confirmation Order, the Bankruptcy Court ordered that "[n]otwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until this case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of this case that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out." *See* Ex. D, ¶ 10.

40.    Moreover, the Court explicitly retained jurisdiction for specific purposes set forth in Article 12 of the Plan, including:

- "to enforce all orders, judgments, injunctions, and rulings entered in connection with the Reorganization Case" (Ex. C, § 12.02(k));

- "<u>to determine all questions and disputes</u>" regarding "any sale or transfer of assets or Property by the Debtor or Reorganized Debtor" or "<u>title to the assets of the Debtor, the Estate, or the Reorganized Debtor</u>" (Ex. C, §§ 12.02(m) and (n) (emphasis added)); and

- "to determine any matters that may arise in connection with or relating to the DIP Loan, the DIP Loan Documents, or the DIP Financing Order" (Ex. C, § 12.02(t)).

41.    This Complaint, and the relief DIP Lender requests herein, falls within the scope of actions for which the Bankruptcy Court retained jurisdiction in the Confirmation Order.

---

[8] "**Confirmation Order**" refers to that certain *Order Confirming Plan* (Docket Number 137 in the Bankruptcy Case). The terms of the Confirmation Order, a true and correct copy of which is attached hereto as <u>Exhibit D</u>, are hereby expressly incorporated into this Complaint as if fully set forth herein.

9

Case 24-01038    Doc 39-4    Filed 02/14/25    Entered 02/14/25 16:03:51    Desc Exhibit
D - Legalist - Thomasboro - First Amended Adversary Complaint    Page 9 of 46

**F.**  **Debtor Commits Numerous Defaults Under DIP Credit Agreement, Including by Granting Subsequent Liens in Thomasboro Property Without DIP Lender Consent**

42.    The DIP Credit Agreement prohibits Debtor from granting liens in the Thomasboro Property without first obtaining DIP Lender's advance consent to do so.

43.    The purpose of this prohibition is to give DIP Lender the opportunity to prevent the Debtor from issuing such liens unless the grantees acknowledge the liens they are receiving are junior in priority to the DIP Lien and agree to certain typical restrictions on their ability to oppose, limit, delay or prevent efforts or foreclosure proceedings by DIP Lender to satisfy outstanding DIP Obligations out of their shared collateral (*i.e.* the Thomasboro Property).

44.    After the DIP Lien in the Thomasboro Property had been granted to DIP Lender and automatically perfected pursuant to the DIP Financing Order, without obtaining DIP Lender's advance consent in compliance with the DIP Credit Agreement, and without any notice at all to DIP Lender in most if not all cases, Debtor issued deeds of trust to five third parties, granting each of them a lien in all or a portion of the Thomasboro Property.

45.    These five deeds of trust were recorded with the Brunswick County Register of Deeds as follows:

      a.    Deed of Trust dated August 8, 2022, and filed of record with the Brunswick County Register of Deeds at Book: 4911 Page: 974 on September 15, 2022, granted by Debtor for the benefit of Caviness & Cates Building and Development Company of Greenville on certain Entitled Lots within the Thomasboro Property;

      b.    Deed of Trust dated January 10, 2023, and filed of record with the Brunswick County Register of Deeds at Book: 4959 Page: 1280 on January 10, 2023,

granted by Debtor for the benefit of NVR, Inc. on certain Entitled Lots within the Thomasboro Property;

c. Deed of Trust dated February 22, 2023, and filed of record with the Brunswick County Register of Deeds at Book: 4997 Page: 0062 on April 10, 2023, granted by Debtor for the benefit of DEFENDANT EAST DEVELOPMENT on the entirety of the Thomasboro Property[9];

d. Deed of Trust dated May 30, 2024, and filed of record with the Brunswick County Register of Deeds on May 30, 2024 at Book: 5184 Page: 1317, granted by Debtor for the benefit of Great Southern Homes, Inc. on certain Entitled Lots within the Thomasboro Property;

e. Deed of Trust dated July 25, 2024, and filed of record with the Brunswick County Register of Deeds at Book: 5219 Page: 887 on August 9, 2024, granted by Debtor for the benefit of New Leaf Builders of NC, LLC on certain Entitled Lots within the Thomasboro Property.

46. On information and belief, each of these five deed-of-trust beneficiaries, including East Development, had notice of the existence of DIP Lien on the Thomasboro Property prior to consummating their underlying transaction with the Debtor that gave rise to their lien.

47. In addition to granting these liens in violation of the DIP Credit Agreement, the Debtor also defaulted by (a) secretly deeding ownership of a significant portion of the Thomasboro Property to a newly created non-Debtor entity ostensibly with the same ownership as Debtor, DEFENDANT THOMASBORO LANDCO II LLC, by a Special Warranty Deed dated April 26, 2023, as recorded seven months later on November 27, 2023 with the Brunswick

---

[9] The "**East Development DOT**" a true and correct copy of which is attached hereto as <u>Exhibit E</u>. The terms of the East Development DOT are hereby expressly incorporated into this Complaint as if fully set forth herein.

County, NC Register of Deeds at Book 5104, Pages 1087-1093[10], and (b) failing to make required payments on the DIP Facility as and when due, including upon its maturity at the end of August 2024.

**G. Debtor Enters Forbearance Agreement with DIP Lender, Admits Defaults and Promises to Deliver Subordination Agreements**

48.     On September 20, 2024, DIP Lender and the Debtor entered into a Forbearance Agreement,[11] wherein DIP Lender agreed to forbear from exercising its rights and remedies against the Debtor in exchange for certain admissions by and deliverables from the Debtor, including the ultimate payoff in full of the DIP Facility on or before October 31, 2024.

49.     In the Forbearance Agreement, the Debtor admitted it was in continuing default of the DIP Credit Agreement due to its grant of the five deeds of trust listed above, its transfer of ownership of part of the Thomasboro Property to Defendant Thomasboro II through the Thomasboro II Warranty Deed, and its payment default. *See* Ex. G, § 1.

50.     Among other deliverables, the Debtor obligated itself in the Forbearance Agreement to provide DIP Lender with (a) a deed of trust representing the DIP Lien on or before September 20, 2024, and (b) subordination agreements, in form and substance satisfactory to DIP Lender, with each of the five recipients of the deeds of trust listed above on or before October 4, 2024.

---

[10] The "**Thomasboro II Warranty Deed**" a true and correct copy of which is attached hereto as Exhibit F. The terms of the Thomasboro II Warranty Deed are hereby expressly incorporated into this Complaint as if fully set forth herein.

[11] "**Forbearance Agreement**" refers to that certain *Forbearance Agreement* entered into as of September 20, 2024 between Debtor and DIP Lender. The terms of the Forbearance Agreement, a true and correct copy of which is attached hereto as Exhibit G, are hereby expressly incorporated into this Complaint as if fully set forth herein.

51.     On September 26, 2024, the Debtor and Defendant Thomasboro II executed a deed of trust in favor of DIP Lender, which was filed of record with the Brunswick County Register of Deeds at Book: 5242 Page: 879 on September 27, 2024.[12]

52.     Following execution of the Forbearance Agreement, DIP Lender provided Debtor with a form of subordination agreement acceptable to DIP Lender, which counsel for Debtor was to deliver to each of the five deed of trust beneficiaries for their consideration and execution.

53.     All of these beneficiaries, except for East Development, negotiated and executed forms of subordination agreements that were acceptable to DIP Lender and recorded.

**H.     Debtor's Fraudulent Transfer to East Development, LLC**

54.     While each of the Debtor's transfer of liens was an admitted violation of the DIP Credit Agreement (and, in turn, the DIP Financing Order), the transfer of the East Development DOT to DEFENDANT EAST DEVELOPMENT (the "**ED Transfer**") was unique and bears special attention.

55.     The other four deed of trust beneficiaries – New Leaf, NVR, and Defendants Caveniss & Cates and Great Southern Homes – are all homebuilders who received their deeds of trust on certain Entitled Lots within the Thomasboro Property in exchange for providing cash to Debtor as earnest money deposits under purchase and sale agreements for those same Entitled Lots.

56.     On information and belief none of these four beneficiaries is an insider or affiliate of the Debtor.

57.     Moreover, each of these four beneficiaries agreed to and has executed a subordination agreement with Legalist acknowledging that its deed of trust is subordinate to

---

[12] The "**DIP Lender DOT**" a true and correct copy of which is attached hereto as <u>Exhibit H</u>. The terms of the DIP Lender DOT are hereby expressly incorporated into this Complaint as if fully set forth herein.

Case 24-01038   Doc 39-4   Filed 02/14/25   Entered 02/14/25 16:03:51   Desc Exhibit D - Legalist - Thomasboro - First Amended Adversary Complaint   Page 13 of 46

Legalist's DIP Lien in the Thomasboro Property and agreeing not to contest the validity or priority of the DIP Lien or DIP Lender DOT in the event of a foreclosure by Legalist.

58.     The same cannot be said regarding East Development and the circumstances underlying the ED Transfer.

59.     East Development is not a homebuilder, and by granting the East Development DOT, Debtor gave East Development a lien on the entirety of the Thomasboro Property, not just on specific Entitled Lots therein.

60.     Moreover, the East Development DOT was not granted to secure an obligation of the Debtor, and Debtor received no direct funding or benefits from East Development in exchange for granting the East Development DOT.

61.     Rather, the East Development DOT was granted to secure a loan of $5 million from East Development to three borrowers/obligors: Defendant Criteria Development, Defendant J. Marion Uter (the Debtor's 50% owner and manager) and E. Stephen Stroud (the Debtor's 50% owner).  For the avoidance of doubt, the Debtor is not a borrower/obligor on this loan.

62.     To evidence this loan, Defendant Criteria Development, Defendant J. Marion Uter and E. Stephen Stroud, each as co-maker, issued a promissory note to Defendant East Development on or about February 23, 2023 (the "**East Development Note**").  For the avoidance of doubt, the Debtor is not a co-maker of the East Development Note.

63.     Criteria Development is owned by the Debtor's owner and manager, Defendant J. Marion Uter, and his son, Paul Uter.

64.     Criteria Development was also the only unsecured creditor in the Bankruptcy Case, purportedly owed over $1.2 million which, according to the terms of the Plan, will not be paid until after DIP Lender has been paid in full.

65.     DIP Lender lacks information to confirm whether Criteria Development's unsecured bankruptcy claim remains outstanding or has been repaid, with proceeds of the DIP Facility, the East Development loan or otherwise.

66.     However, as evidenced by certain bank records only recently provided to Legalist by the Debtor (some as recently as January 16, 2025), all proceeds of the DIP Facility provided by Legalist to Debtor (approximately $13 million in total) were immediately transferred by Debtor upon their receipt into an account at Regions Bank in the name of Criteria Construction LLC[13] (the "**Criteria Account**").  Once in the Criteria Account, these DIP Facility Proceeds were hopelessly commingled with funds from other sources, and used indiscriminately to fund tens of millions of dollars of withdrawals and outgoing payments from the Criteria Account that relate to costs (or purported costs) of other Criteria Development projects not involving the Debtor or the Thomasboro Property, as well as what appear to be payments made for the personal enrichment of the Uters and possibly other members, managers and/or affiliates of the Debtor and/or Criteria Development.  On information and belief, East Development is owned and financed by a consortium of private investors with close ties to the Uters and Criteria Development.

67.     On information and belief, the Uters and some or all of the private investors behind East Development, including without limitation East Development principal/manager Douglas G. Watson, have previously been and/or are currently involved in numerous other projects and financial co-investments.

---

[13] On information and belief, Criteria Construction LLC is under common ownership and control with and/or an affiliate of both of the Debtor and Criteria Development.

68.    On information and belief, at various times – including at the time of the ED Transfer – Debtor and Defendants East Development and Criteria Development were all represented by the same counsel.

69.    At all relevant times hereto, Defendants East Development and Criteria Development were and are "affiliates" and "insiders" of the Debtor, as those terms are defined under applicable law.

70.    The Debtor's transfer of the East Development DOT to East Development, granting it a lien on the entirety of the Thomasboro Property, in apparent satisfaction of, or as security for, an obligation Criteria Development owes to East Development, was undertaken with by Debtor with intent to hinder, delay and/or defraud Debtor's other creditors, including DIP Lender.

71.    Furthermore, at the time of the ED Transfer, Debtor was (as it continues to be) insolvent and unable to pay its debts as they become due.

72.    As a result, The ED Transfer was a textbook actual and constructive fraudulent transfer, and should be avoided.

**I.    Debtor's Fraudulent Transfer to Thomasboro Landco II LLC**

73.    Pursuant to the Debtor's transfer of the Thomasboro II Warranty Deed to DEFENDANT THOMASBORO LANDCO II LLC, the Debtor conveyed approximately 997.48 acres of the Thomasboro property to Thomasboro II (the "**Thomasboro II Transfer**").

74.    Thomasboro II was created on or shortly before April 26, 2023.

75.    On information and belief, Thomasboro II paid the Debtor only nominal consideration (if any) in exchange for the Thomasboro II Transfer.

76.     By its terms, the East Development Note called for the repayment to East Development of amounts loaned on or before April 30, 2023.  On information and belief, none of the amounts loaned by East Development have been repaid.

77.     The Thomasboro II Warranty Deed was executed by the Debtor on April 26, 2023, but not recorded with the Brunswick County, NC Register of Deeds until November 27, 2023. Thus, on information and belief, the Thomasboro II Transfer – executed on the eve of a total default by Defendant Criteria Development, Defendant J. Marion Uter and E. Stephen Stroud of their obligations to repay East Development under the East Development Note – was intended by all Defendants to enhance East Development's security position and likelihood of ultimate repayment on the soon-to-be-delinquent East Development Note by moving almost 1000 acres of Legalist's collateral away from Legalist's obligor on the DIP Loan (the Debtor) and to a separate entity (Thomasboro II) that Legalist would not even know existed until more than a year later.

78.     On information and belief, at various times – including at the time of the Thomasboro II Transfer – Defendants were all represented by the same counsel.

79.     At all relevant times hereto, Defendant Thomasboro II was and is an "affiliate" and "insider" of the Debtor, as those terms are defined under applicable law.

80.     The Thomasboro II Transfer was undertaken by the Debtor with intent to hinder, delay and/or defraud Debtor's other creditors, including DIP Lender.

81.     Furthermore, on information and belief, at the time of the Thomasboro II Transfer, (a) Thomasboro II paid the Debtor only nominal consideration (if any) in exchange for the Thomasboro II Transfer, and (b) Debtor was (as it continues to be) insolvent and unable to pay its debts as they become due.

82. As a result, The Thomasboro II Transfer was a textbook actual and constructive fraudulent transfer, and should be avoided.

**J.  Debtor's Breach of the Forbearance Agreement and Defendant J. Marion Uter's Fraud Against DIP Lender**

83. Legalist first learned of the Thomasboro II Transfer in August 2024 shortly before it called a default under the DIP Facility.

84. When Legalist asked the Debtor for an explanation of the Thomasboro II Transfer and why it was kept secret from Legalist, the Debtor (via its counsel and Defendant Uter) repeatedly told Legalist the transfer was not intended to and did not have any effect on the validity, enforceability and priority of the DIP Lien.  For example, in a September 11, 2024 email to Legalist's counsel, the Debtor's counsel stated "[t]he transfer to Thomasboro II was done to deal with tax issues and is owned by the same owners of Thomasboro."

85. Nevertheless, the Debtor refused Legalist's requests to issue Legalist a deed of trust for the entirety of the Thomasboro Property – something it clearly would have the authority to do as long as its representations about "common control" and "same owners" vis-à-vis Thomasboro II were true.

86. Accordingly, Legalist brought a motion asking the Bankruptcy Court to compel the Debtor to issue (or cause to be issued) a deed of trust with respect to the entirety of the Thomasboro Property for the benefit of Legalist, on which a hearing before the Bankruptcy Court was scheduled for September 17, 2024.  *See* Bankruptcy Case Doc. Nos. 202, 205.

87. Debtor initially opposed the motion, but ultimately agreed in a proverbial settlement on the courthouse steps – embodied in the Forbearance Agreement – to provide Legalist the various legal documents and assurances it had been asking for.  Or so Legalist was led to believe, anyway.

88.     The Forbearance Agreement was executed by Defendant J. Marion Uter on behalf of both the Debtor "and its affiliate under common control Thomasboro Landco II LLC."

89.     In the Forbearance Agreement, the Debtor represented and warranted that it and Thomasboro II are affiliated entities owned by the same members. Ex. G § 10(D).

90.     Furthermore, the Debtor represented and warranted that the Thomasboro II Transfer was made solely for tax purposes, and that all of the Thomasboro Property remained under the common control of the Debtor. Ex. G § 10(D).

91.     A key part of the Forbearance Agreement was the agreement of Debtor and Thomasboro II therein to provide Legalist with a recordable deed of trust evidencing its DIP Lien in the entirety of the Thomasboro Property (i.e. the DIP Lender DOT), which Debtor and Defendant and Thomasboro II ultimately gave on September 26, 2024.

92.     Similar to the Forbearance Agreement, the DIP Lender DOT included a representation by Debtor and Thomasboro II that, although ownership of [Thomasboro Property] was split "for tax purposes" between Debtor and Thomasboro II, "all of the [Thomasboro Property] is under common control of [Debtor]." *See* Ex. H, pg.2.

93.     The DIP Lender DOT also included a representation by Debtor and Thomasboro II that "[Thomasboro II] has agreed all to execute and deliver this Deed of Trust to more formally memorialize the lien on land titled in [Thomasboro II] in favor of [Legalist] that was created through the DIP Loan Order with [Debtor] owned all of the Land." *See* Ex. H, pg. 3.

94.     Defendant J. Marion Uter signed the DIP Lender DOT in separate signature blocks on behalf of both Debtor and Thomasboro II.  Both signatures were notarized.

95.     In the signature block for Thomasboro II, Defendant J. Marion Uter listed his role/title as "Manager".

96.     The DIP Lender DOT was duly recorded on September 27, 2024.

97.     In the weeks thereafter, Debtor committed several defaults under the Forbearance Agreement which directly led to Legalist's original commencement of this action on November 1, 2024.  However, through its commencement of this action and continuing initially thereafter, Legalist continued to believe, as it had no reason to doubt, that the Forbearance Agreement and DIP Lender DOT had been validly executed by and were enforceable against Defendant Thomasboro II on the basis of Defendant J. Marion Uter's signatures thereon.

**K.  Surprising Allegations by Defendants East Development and Thomasboro II**

98.     After being served with Legalist's Original Complaint, the Debtor and Thomasboro II appeared in this action through separate counsel despite their prior representations of being under "common control."

99.     Of surprise to Legalist, Thomasboro II appeared in the action through the same counsel as appeared for Defendant East Development.

100.     Thus it appears that as of the commencement of this action at least – if not also since Thomasboro II's original formation in April 2023 – either East Development or certain of its members and/or managers are members and/or managers of Thomasboro II.

101.     This would in turn corroborate the close affiliation and likely "insider" status of East Development to the Debtor.

102.     Even more surprising to Legalist, In its joint answer with Defendant East Development to DIP Lender's Original Complaint, Thomasboro II denied any allegations that the ownership of Thomasboro II is the same as the Debtor. *See* Adversary Doc. No. 20, ⁋ 25.

103.     Additionally, Thomasboro II denied that Uter had authority to sign on behalf of, or otherwise bind, Thomasboro II to the DIP Lender DOT.  See Adversary Doc. No. 20, ⁋ 25.

Case 24-01038    Doc 39-4    Filed 02/14/25    Entered 02/14/25 16:03:51    Desc Exhibit
D - Legalist - Thomasboro - First Amended Adversary Complaint    Page 20 of 46

104.     Thomasboro II's allegations are in direct conflict with the representations and warranties made by Uter, on behalf of the Debtor, in the Forbearance Agreement, as outlined above.  Furthermore, they place the effectiveness of the DIP Lender DOT against the portions of the Thomasboro Property held by Thomasboro II into question. Legalist does not concede that Defendant Uter lacked the actual or apparent authority required to bind Thomasboro II to the Forbearance Agreement and DIP Lender DOT.

105.     Nevertheless, if Defendant Uter did not have authority to bind Thomasboro II, the Debtor is in breach of the Forbearance Agreement for failing to deliver a deed of trust sufficient to cover the entirety of the Thomasboro Property, specifically as it relates to the property held by Thomasboro II.

106.     Further, if Defendant Uter lacked authority to bind Thomasboro II, he committed a fraud against DIP Lender in representing that he possessed the authority to act on behalf of and bind Thomasboro II.

107.     This fraud was supported by the actions (and/or inactions) of each of the other Defendants in this action, and cause Legalist substantial and costly delay in its efforts to enforce its rights in the DIP Collateral (which remain ongoing) and to foreclose on the Thomasboro Property (which proceedings Legalist is still not in a position to commence as of the filing hereof).

108.     Consequently, and as explained further below, Legalist relied on the Defendants' fraud to its detriment, has been damaged, and is entitled to seek redress and compensation.

## COUNT I
### DETERMINATION OF THE VALIDITY, PRIORITY, AND/OR EXTENT OF LIENS, CLAIMS, OR OTHERS INTERESTS IN THE THOMASBORO PROPERTY
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, and East Development, LLC)**

109.     Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

110.    Pursuant to the DIP Credit Agreement, Debtor agreed to and did grant DIP Lender a DIP Lien in substantially all of its assets, including the entirety of the Thomasboro Property.

111.    On May 16, 2022, the Bankruptcy Court entered the DIP Financing Order, thereby authorizing Debtor to enter into the DIP Credit Agreement, approving all terms thereof, and granting DIP Lender a fully perfected DIP Lien in the entirety of the Thomasboro Property pursuant to applicable federal law, including 11 U.S.C. § 364.

112.    The DIP Financing Order has been final and non-appealable since no later than May 30, 2022.

113.    Pursuant to the explicit terms of the DIP Financing Order, the DIP Lien was "automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law," and therefore it was not necessary for DIP Lender to record a deed of trust, a copy of the DIP Financing Order, or any other document with the Brunswick County Register of Deeds to perfect the DIP Lien or thereafter maintain its perfection, including for purposes of establishing the DIP Lien's priority over liens and security interests in the Thomasboro property subsequently perfected under applicable state law.

114.    Furthermore, none of the validity, priority or extent of DIP Lender's DIP Lien in the Thomasboro Property was extinguished, limited or otherwise impacted by the Debtor's Plan and the Bankruptcy Court's subsequently entered Confirmation Order confirming that Plan.

115.    Debtor gave value in exchange for the DIP Lien, advancing approximately $26 million in new funding to Debtor under the DIP Facility beginning with an initial funding on May 25, 2022.

116.    As a result, since entry of the DIP Financing Order on May 16, 2022 (and in any event no later than the initial funding on May 25, 2022), DIP Lender has had and continues to

have a valid, perfected lien on the entirety of the Thomasboro Property, including all Entitled Lots thereon.

117.    Subsequently, the Debtor engaged in the East Development Transfer, granting a lien on and security interest in all of the Thomasboro Property to Defendant East Development, LLC, including by issuing the East Development DOT. The East Development DOT was recorded after the perfection of the DIP Lien.

118.    Although not necessary for the prior perfection of the DIP Lien to be binding on East Development, on information and belief, East Development had notice of the existence of DIP Lien on the Thomasboro Property prior to consummating the East Development Transfer with the Debtor that gave rise to its lien.

119.    Thus, by operation of applicable law, DIP Lender's DIP Lien on the Thomasboro Property is senior in all respects to the East Development DOT.  For the avoidance of doubt, this remains true notwithstanding (a) the East Development DOT was recorded with the Brunswick County Register of Deeds prior to the DIP Lender DOT being recorded, and (b) the Debtor has transferred a portion of the Thomasboro Property to Defendant Thomasboro Landco II LLC.

120.    Nevertheless, the absence of documentation recorded with the Brunswick County Register of Deeds that acknowledges the senior priority of the DIP Lien over the East Development DOT and defines the relative rights between DIP Lender and East Development poses substantial and undue risks of complication, confusion, obstruction and/or delay on any future enforcement efforts or foreclosure proceedings DIP Lender may be forced to pursue its rights in the Thomasboro Property to satisfy Debtor's obligations under the DIP Facility.

121.    East Development refused and/or is not voluntarily willing to enter into recordable documentation by which it acknowledges the East Development DOT is subordinate

to the DIP Lien and agrees to commercially reasonable terms limiting its ability to interfere with any future enforcement efforts or foreclosure proceeding DIP Lender may be forced to pursue to satisfy Debtor's obligations under the DIP Facility.

122. Debtor's obligations to DIP Lender under the DIP Facility are (and will continue to be until paid off in full) outstanding allowed superpriority administrative expenses of the estate in the Bankruptcy Case as well as senior secured obligations of Debtor under the terms of the DIP Credit Agreement, DIP Financing Order, Plan and Confirmation Order.

123. Therefore, the refusal and/or unwillingness of East Development to voluntarily enter into recordable subordination agreement prevents the fulfillment of Debtor's obligations and the enforcement of DIP Lender's rights and interests under the DIP Loan Documents and Plan, which in turn constitutes a collateral attack on the Bankruptcy Court's DIP Financing Order and Confirmation Order.

124. Accordingly, to prevent such collateral attack on final orders of the Bankruptcy Court and the integrity of the Bankruptcy Case generally, and to preserve and protect the ability for the Debtor's obligations to DIP Lender under the DIP Loan Documents and Plan to be fulfilled including, if necessary, by DIP Lender enforcing its rights against the Thomasboro Property, DIP Lender is entitled to a judgment (A) declaring the senior priority of the DIP Lien over the East Development Lien in the Thomasboro Property and defining the relative rights between DIP Lender and East Development concerning any efforts or foreclosure proceedings by DIP Lender to pursue its rights in the Thomasboro Property to satisfy outstanding administrative expenses in the Bankruptcy Case and senior secured obligations of the Debtor under the DIP Facility, which judgment, subsequent to entry, can be recorded with the Brunswick County Register of Deeds, or (B) in the alternative, compelling East Development to execute recordable

documentation acknowledging the senior priority of the DIP Lien over the East Development Lien in the Thomasboro Property and agreeing not to take any actions to oppose, limit, delay or prevent efforts or foreclosure proceedings by DIP Lender to pursue its rights in the Thomasboro Property to satisfy outstanding administrative expenses in the Bankruptcy Case and senior secured obligations of the Debtor under the DIP Facility.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to 28 U.S.C. § 2201, 11 U.S.C. §§ 105, 364, 1123 and 1142 and Rules 3020(d), 7001(1), (2), (7), (8) and (9), and 7070 of the Federal Rules of Bankruptcy Procedure, judgment in its favor and against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, and East Development, LLC:

A. Finding, concluding, adjudicating and/or declaring that the priority of the DIP Lien in the Thomasboro Property is senior and superior in all respects to the priority of the East Development Lien in all or any portion of the Thomasboro Property,

B. Enjoining Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

C. Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly

paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce its rights, liens and interests under the DIP Credit Agreement, DIP Lien and/or DIP Lender DOT against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

D.  Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – to notify DIP Lender promptly upon East Development, LLC's receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions,

E.  In the alternative, compelling East Development, LLC to enter into recordable documentation acknowledging the subordination as stated in Recital A above and agreeing to the terms and limitations set forth in Recitals C and D above, and

F.  Granting such other and further relief as the Court deems just and proper.

## COUNT II
### DECLARATORY JUDGMENT (28 U.S.C.A. § 2201)
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, and J. Marion Uter)**

125.   Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

126.   In its Answer to the Original Complaint, Thomasboro II denied "any allegation, inference, implication or conclusion" that the DIP Lender DOT "was validly executed [by J. Marion Uter], properly authorized, or constitutes a valid and binding obligation of Thomasboro Landco II." See Adversary Doc. No. 20, ⁋ 27.

127.   On the other hand, DIP Lender maintains that J. Marion Uter possessed the actual and/or apparent authority necessary to bind Thomasboro II to the DIP Lender DOT, and that the DIP Lender DOT is enforceable against Thomasboro II.

128.   Uter was held out by Thomasboro II and its agents as someone with the authority to act on its behalf, and DIP Lender relied upon these representations of authority in entering into the Forbearance Agreement.

129.   An actual, justiciable controversy exists regarding whether Uter possessed the actual and/or apparent authority to execute the DIP Lender DOT on behalf of Thomasboro II.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC and J. Marion Uter:

A. Finding, concluding, adjudicating and/or declaring that Uter possessed the actual and/or apparent authority to enter into the DIP Lender DOT on behalf of Thomasboro II, and the DIP Lender DOT is binding and enforceable against Thomasboro II, and

B. Granting such other and further relief as the Court deems just and proper.

COUNT III
EQUITABLE SUBROGATION
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC,
and East Development, LLC)**

130.    Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

131.    Prior to commencement of the Bankruptcy Case, the Thomasboro Property was encumbered by a recorded deed of trust issued by Debtor for the benefit of the Senior Lenders, providing the Senior Lenders with a first priority liens and security interests in the Thomasboro Property (collectively, the "**Senior Lender Liens**") to secure the Debtor's payment and performance under a $13 million Promissory Note given by Debtor to Senior Lenders on or about June 24, 2021.

132.    On May 25, 2022, the Bankruptcy Court entered the DIP Financing Order, which (among other things) granted DIP Lender the DIP Lien in the Thomasboro Property, which DIP Lien was automatically perfected without the need to comply with any state law recording requirements, and which was senior in priority over all other existing or subsequent encumbrances on the Thomasboro Property, except for the Senior Lender Liens and certain easements which remained Senior to the DIP Lien.

133.    As evidenced by the terms of the DIP Credit Agreement and DIP Financing Order, the payoff in full of Debtors' indebtedness to the Senior Lenders and the release of the Senior Lender Liens were express conditions to Debtor and DIP Lender entering into the DIP Credit Agreement and consummating the DIP Financing.

134.    On or about May 25, 2022, following entry of the DIP Financing Order, DIP Lender in fact advanced funds under the DIP Facility directly to the Senior Lenders – specifically $12,391,680.83 – for the purpose of repaying in full the Debtor's indebtedness to the Senior Lenders and causing the release of the Senior Lender Liens on the Thomasboro Property.

135. On or about May 25, 2022, the Debtor's indebtedness to Senior Lenders in fact was fully and finally satisfied upon, and the Senior Lenders caused the Senior Lender Liens on the Thomasboro Property to be released as a direct consequence of, the Senior Lenders' receipt of DIP Facility funds paid directly to the Senior Lenders by DIP Lender.

136. This payment to the Senior Lender is one that, in equity and good conscience, should have been discharged by the Debtor as the party primarily liable for said payment.

137. Accordingly, if and to the extent the DIP Lien is not found, concluded and declared in connection with prior counts in this Complaint to be senior in priority to the East Development DOT, then DIP Lender is entitled to be subrogated to the Senior Lenders' rights, remedies, and securities as against the Debtor including the benefits of the Senior Lender Liens in the Thomasboro Property.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendants Thomasboro Landco, LLC and East Development, LLC:

C. Finding, concluding, adjudicating and/or declaring that DIP Lender is entitled to be and is subrogated to the Senior Lenders' rights, remedies, and securities as against the Debtor,

D. Finding, concluding, adjudicating and/or declaring that DIP Lender is entitled to the benefit of the Senior Lender Liens in the Thomasboro Property and all rights and remedies formerly held by the Senior Lenders with respect thereto, notwithstanding the prior release of such liens and recording of documentation to that effect,

E. Finding, concluding, adjudicating and/or declaring that the Senior Lender Liens in the Thomasboro Property have priority over all subsequently granted and/or recorded

liens and security interests in the Thomasboro Property held by Defendant East Development, LLC,

F.  Enjoining Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured through equitable subrogation by the Senior Lender Liens have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) free and clear of the Senior Lender Liens,

G.  Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured through equitable subrogation by the Senior Lender Liens have been indefeasibly paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce any rights, liens and interests of Senior Lenders to which it has become subrogated (including the Senior Lender Liens) against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

H.  Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured through equitable subrogation by the Senior Lender Liens have been indefeasibly paid in full – to notify DIP Lender promptly upon their receipt of

any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions, and

I.   Granting such other and further relief as the Court deems just and proper.

## COUNT IV
### ALABAMA UNIFORM VOIDABLE TRANSACTIONS ACT (ALA. CODE § 8-9B-1, ET SEQ.) AND/OR UNIFORM VOIDABLE TRANSACTIONS ACT (N.C. GEN. STAT. ANN. § 39-23.1, ET SEQ.) (ACTUAL FRAUD)
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, Criteria Development, LLC and East Development, LLC)**

138.   Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

139.   According to its Voluntary Chapter 11 Petition commencing the Bankruptcy Case (Bankruptcy Case Doc. No. 1), Debtor is an organization with its principal place of business and its chief executive office located in the Southern District of Alabama, while its principal assets (including the Thomasboro Property) are located in North Carolina.

140.   Accordingly, causes of action seeking to void transactions concerning liens and security interests granted by the Debtor in the Thomasboro Property are governed by the Uniform Voidable Transactions Act as adopted in Alabama or North Carolina.

141.   At all times relevant hereto, and with respect to the ED Transfer, DIP Lender was a creditor of the Debtor whose claim arose before the ED Transfer, and who continues to be a creditor of the Debtor.

142.   The ED Transfer occurred less than four years prior to the commencement of this action.

143. The ED Transfer was made by or on behalf of the Debtor with the actual intent to hinder, delay, or defraud its creditors.

144. Accordingly, the ED Transfer is voidable as to DIP Lender pursuant to Ala. Code § 8-9B-5(a)(1) and/or N.C. Gen. Stat. § 39-23.4(a)(1), and DIP Lender is entitled to a judgment voiding the ED Transfer to the extent necessary to satisfy DIP Lender's claim against Debtor.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to Ala. Code § 8-9B-8(a) and/or N.C. Gen. Stat. § 39-23.7(a), judgment in its favor and against Defendants Thomasboro Landco, LLC, Criteria Development, LLC and East Development, LLC:

A. Finding, concluding, adjudicating and/or declaring that the ED Transfer was fraudulent and void,

B. Finding, concluding, adjudicating and/or declaring that the East Development Lien is void and/or inferior in priority to the DIP Lien,

C. Enjoining Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC and Criteria Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

D. Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly

paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce its rights, liens and interests under the DIP Credit Agreement, DIP Lien and/or DIP Lender DOT against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

E.  Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – to notify DIP Lender promptly upon East Development, LLC's receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions, and

F.  Granting such other and further relief as the Court deems just and proper.

### COUNT V
### ALABAMA UNIFORM VOIDABLE TRANSACTIONS ACT (ALA. CODE § 8-9B-1, ET SEQ.) AND/OR UNIFORM VOIDABLE TRANSACTIONS ACT (N.C. GEN. STAT. ANN. § 39-23.1, ET SEQ.) (CONSTRUCTIVE FRAUD)
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, Criteria Development, LLC and East Development, LLC)**

145.    Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

146.    At all times relevant hereto, and with respect to the ED Transfer, DIP Lender was a creditor of the Debtor whose claim arose before the ED Transfer, and who continues to be a creditor of the Debtor.

147.    The ED Transfer occurred while Debtor was insolvent, or the ED Transfer otherwise rendered Debtor insolvent.

148.    The ED Transfer was to an insider of the Debtor, and the Debtor received no value from East Development for the ED Transfer or otherwise received less than reasonably equivalent value.

149.    At the time of the ED Transfer, the Debtor was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

150.    At the time of the ED Transfer, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

151.    Accordingly, the ED Transfer is voidable as to DIP Lender pursuant to Ala. Code § 8-9B-5(a)(2) and/or N.C. Gen. Stat. § 39-23.4(a)(2), and DIP Lender is entitled to a judgment voiding the ED Transfer to the extent necessary to satisfy DIP Lender's claim against Debtor.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to Ala. Code § 8-9B-8(a) and/or N.C. Gen. Stat. § 39-23.7(a), judgment in its favor and against Defendants Thomasboro Landco, LLC, Criteria Development, LLC and East Development, LLC:

A. Finding, concluding, adjudicating and/or declaring that the ED Transfer was fraudulent and void,

B. Finding, concluding, adjudicating and/or declaring that the East Development Lien is void and/or inferior in priority to the DIP Lien,

C. Enjoining Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC and Criteria Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

D. Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from bringing any action against Debtor or the Thomasboro Property to enforce obligations now or hereafter owed by Criteria Development, LLC and from contesting directly or indirectly any enforcement action, foreclosure proceeding or other action undertaken by DIP Lender to enforce its rights, liens and interests under the DIP Credit Agreement, DIP Lien and/or DIP Lender DOT against Debtor, any of Debtor's real or personal property (including the Thomasboro Property) or proceeds thereof,

E. Enjoining Defendant East Development, LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly

paid in full – to notify DIP Lender promptly upon East Development, LLC's receipt of any proceeds of the Debtor's real or personal property (including the Thomasboro Property), to keep such proceeds segregated and held in trust for the benefit of DIP Lender until they can be paid over to DIP Lender, and to forthwith pay such proceeds over to DIP Lender in accordance with DIP Lender's commercially reasonable instructions, and

F. Granting such other and further relief as the Court deems just and proper.

## COUNT VI
### ALABAMA UNIFORM VOIDABLE TRANSACTIONS ACT (ALA. CODE § 8-9B-1, ET SEQ.) AND/OR UNIFORM VOIDABLE TRANSACTIONS ACT (N.C. GEN. STAT. ANN. § 39-23.1, ET SEQ.) (ACTUAL FRAUD)
**(Against Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC)**

152. Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

153. According to its Voluntary Chapter 11 Petition commencing the Bankruptcy Case (Bankruptcy Case Doc. No. 1), Debtor is an organization with its principal place of business and its chief executive office located in the Southern District of Alabama, while its principal assets (including the Thomasboro Property) are located in North Carolina.

154. Accordingly, causes of action seeking to void transactions concerning liens and security interests granted by the Debtor in the Thomasboro Property are governed by the Uniform Voidable Transactions Act as adopted in Alabama or North Carolina.

155. At all times relevant hereto, and with respect to the Thomasboro II Transfer, DIP Lender was a creditor of the Debtor whose claim arose before the Thomasboro II Transfer, and who continues to be a creditor of the Debtor.

156. The Thomasboro II Transfer occurred less than four years prior to the commencement of this action.

157.   The Thomasboro II Transfer was made by or on behalf of the Debtor with the actual intent to hinder, delay, or defraud its creditors.

158.   Accordingly, the Thomasboro II Transfer is voidable as to DIP Lender pursuant to Ala. Code § 8-9B-5(a)(1) and/or N.C. Gen. Stat. § 39-23.4(a)(1), and DIP Lender is entitled to a judgment voiding the Thomasboro II Transfer to the extent necessary to satisfy DIP Lender's claim against Debtor.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to Ala. Code § 8-9B-8(a) and/or N.C. Gen. Stat. § 39-23.7(a), judgment in its favor and against Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC:

A.   Finding, concluding, adjudicating and/or declaring that the Thomasboro II Transfer was fraudulent and void,

B.   Finding, concluding, adjudicating and/or declaring that the Thomasboro II Transfer is void and/or inferior in priority to the DIP Lien,

C.   Enjoining Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

D.   Granting such other and further relief as the Court deems just and proper.

## COUNT VII
### ALABAMA UNIFORM VOIDABLE TRANSACTIONS ACT (ALA. CODE § 8-9B-1, ET SEQ.) AND/OR UNIFORM VOIDABLE TRANSACTIONS ACT (N.C. GEN. STAT. ANN. § 39-23.1, ET SEQ.) (CONSTRUCTIVE FRAUD)
**(Against Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC)**

159.    Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

160.    At all times relevant hereto, and with respect to the Thomasboro II Transfer, DIP Lender was a creditor of the Debtor whose claim arose before the Thomasboro II Transfer, and who continues to be a creditor of the Debtor.

161.    The Thomasboro II Transfer occurred while Debtor was insolvent, or the Thomasboro II Transfer otherwise rendered Debtor insolvent.

162.    The Thomasboro II Transfer was to an insider of the Debtor, and the Debtor received no value from East Development for the Thomasboro II Transfer or otherwise received less than reasonably equivalent value.

163.    At the time of the Thomasboro II Transfer, the Debtor was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

164.    At the time of the Thomasboro II Transfer, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

165.    Accordingly, the Thomasboro II Transfer is voidable as to DIP Lender pursuant to Ala. Code § 8-9B-5(a)(2) and/or N.C. Gen. Stat. § 39-23.4(a)(2), and DIP Lender is entitled to a judgment voiding the Thomasboro II Transfer to the extent necessary to satisfy DIP Lender's claim against Debtor.

WHEREFORE, Plaintiff DIP Lender respectfully requests, pursuant to Ala. Code § 8-9B-8(a) and/or N.C. Gen. Stat. § 39-23.7(a), judgment in its favor and against Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC

A. Finding, concluding, adjudicating and/or declaring that the Thomasboro II Transfer was fraudulent and void,

B. Finding, concluding, adjudicating and/or declaring that the Thomasboro II Transfer is void and/or inferior in priority to the DIP Lien,

C. Enjoining Defendants Thomasboro Landco, LLC and Thomasboro Landco II LLC – unless and until all obligations due and owing (or that become due and owing hereafter) by Debtor to DIP Lender and which are secured by the DIP Lien and/or DIP Lender DOT have been indefeasibly paid in full – from any and all efforts to dispose, encumber, or transfer any right, title, or interest in and to the Thomasboro Property (or facilitate any of the foregoing) without complying in full with the terms of the DIP Credit Agreement and DIP Financing Order (including, without limitation, by obtaining DIP Lender's advance written consent),

D. Granting such other and further relief as the Court deems just and proper.

**COUNT VIII**
**BREACH OF CONTRACT**
**(Against Defendant Thomasboro Landco, LLC)**

166. Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

167. DIP Lender maintains that Uter possessed the authority to act on behalf of Thomasboro II at all relevant times hereto, and pleads this cause of action in the alternative should the Court find that Uter lacked said authority.

168. The Debtor and DIP Lender entered in to the Forbearance Agreement, which constitutes a valid and binding contract.

169. The Debtor breached the Forbearance Agreement by representing and warranting, among other things, that the Debtor and Thomasboro II were affiliated entities owned by the same members and that the Thomasboro Property remained under the common control of the Debtor.

170. Furthermore, the Debtor breached the Forbearance Agreement by, among other things, failing to deliver a fully executed deed of trust to DIP Lender covering the entirety of the Thomasboro Property.

171. DIP Lender has suffered damages as a direct and proximate result of the Debtor's breach of the Forbearance Agreement.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendant Thomasboro Landco, LLC:

A. Finding, concluding, adjudicating and/or declaring that the Debtor breached the Forbearance Agreement,

B. Awarding DIP Lender damages in an amount which will fully compensate it for the Debtor's breach of the Forbearance Agreement, and

C. Granting such other and further relief as the Court deems just and proper.

## COUNT IX
### FRAUDULENT INDUCEMENT
**(Against Defendant J. Marion Uter)**

172. Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

173. DIP Lender maintains that Uter possessed the authority to act on behalf of Thomasboro II at all relevant times hereto, and pleads this cause of action in the alternative should the Court find that Uter lacked said authority.

174. Uter made representations to DIP Lender through his attorneys, and in the Forbearance Agreement, that the Debtor and Thomasboro II were affiliated entities owned by the same members, that the Thomasboro Property remained under the common control of the Debtor, and that Uter possessed the authority to act at all relevant times hereto on behalf of Thomasboro II.

175. These representations were false, and Uter knew said representations were false when they were made.

176. Uter intended for DIP Lender to act on these representations, and DIP Lender did reasonably rely upon these representations when it entered into the Forbearance Agreement and agreed to forbear from exercising its rights and remedies against the Debtor.

177. DIP Lender would not have entered into the Forbearance Agreement except for Uter's representations.

178. DIP Lender has suffered damages as a direct and proximate result of Uter's misrepresentations.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendant J. Marion Uter:

A. Finding, concluding, adjudicating and/or declaring that Defendant J. Marion Uter fraudulently induced DIP Lender into entering into the Forbearance Agreement,

B. Awarding DIP Lender damages in an amount which will fully compensate it for the damages, including punitive damages as allowed for by law, it suffered as a result of Defendant J. Marion Uter's misrepresentations, and

C. Granting such other and further relief as the Court deems just and proper.

## COUNT X
## NEGLIGENT MISREPRESENTATION
**(Against Defendant J. Marion Uter)**

179. Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

180. DIP Lender maintains that Uter possessed the authority to act on behalf of Thomasboro II at all relevant times hereto, and pleads this cause of action in the alternative should the Court find that Uter lacked said authority.

181. Uter made representations to DIP Lender through his attorneys, and in the Forbearance Agreement, that the Debtor and Thomasboro II were affiliated entities owned by the same members, that the Thomasboro Property remained under the common control of the Debtor, and that Uter possessed the authority to act at all relevant times hereto on behalf of Thomasboro II.

182. DIP Lender justifiably relied upon this representation, to its detriment, when it entered into the Forbearance Agreement and agreed to forbear from exercising its rights and remedies against the Debtor.

183. Uter owed DIP Lender a duty of care in making these representations, and they were made based upon information prepared without reasonable care.

184. DIP Lender has suffered damages as a direct and proximate result of Uter's misrepresentations.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendant Thomasboro Landco, LLC:

A. Finding, concluding, adjudicating and/or declaring that Defendant J. Marion Uter's negligent misrepresentations induced DIP Lender into entering into the Forbearance Agreement,

B. Awarding DIP Lender damages in an amount which will fully compensate it for the damages it suffered as a result of Defendant J. Marion Uter's misrepresentations, and

C. Granting such other and further relief as the Court deems just and proper.

## COUNT XI
### CIVIL CONSPIRACY
**(Against Defendants Thomasboro Landco, LLC, Thomasboro Landco II LLC, and J. Marion Uter)**

185.    Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

186.    DIP Lender maintains that Uter possessed the authority to act on behalf of Thomasboro II at all relevant times hereto, and pleads this cause of action in the alternative should the Court find that Uter lacked said authority.

187.    Uter, Debtor, and/or Thomasboro II entered into a conspiracy to defraud DIP Lender by falsely representing that Uter had authority to act on behalf of and bind Thomasboro II to the DIP Lender DOT and the Forbearance Agreement.

188.    DIP Lender was injured as a result of Uter, Landco, and/or Thomasboro II's conspiracy.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendant Thomasboro Landco, LLC:

A. Finding, concluding, adjudicating and/or declaring that Defendants J. Marion Uter, Thomasboro Landco, LLC, and Thomasboro Landco II LLC entered into a conspiracy to defraud DIP Lender into entering into the Forbearance Agreement,

B. Awarding DIP Lender damages in an amount which will fully compensate it for the damages, including punitive damages as allowed for by law, it suffered as a result of Defendants J. Marion Uter, Thomasboro Landco, LLC, and Thomasboro Landco II LLC's conspiracy, and

C. Granting such other and further relief as the Court deems just and proper.

### COUNT XII
### VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. GEN. STAT. ANN. § 75-16)
### (Against Defendant J. Marion Uter)

189. Plaintiff DIP Lender incorporates its prior allegations as if fully set forth herein.

190. DIP Lender maintains that Uter possessed the authority to act on behalf of Thomasboro II at all relevant times hereto, and pleads this cause of action in the alternative should the Court find that Uter lacked said authority.

191. Pursuant to N.C. Gen. Stat. Ann. § 14-118.6(d), the presentation or filing of an instrument with a register of deeds that purports to be a lien or encumbrance that is determined to be materially false, fictitious, or fraudulent shall constitute a violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. Ann. § 75-1.1).

192. By signing and filing the DIP Lender DOT with the Brunswick County, NC Register of Deeds purportedly on behalf of Thomasboro II, Uter participated in the filing of a false lien or encumbrance against the Thomasboro Property.

193. Uter knew, or had reason to know, that that the DIP Lender DOT contained a materially false, fictitious, or fraudulent statement or representation.

194. Accordingly, Uter's presentation and filing of the DIP Lender DOT with the Brunswick County, NC Register of Deeds constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

195. DIP Lender was injured by reason of Uter's filing of he DIP Lender DOT.

WHEREFORE, Plaintiff DIP Lender respectfully requests judgment in its favor and against Defendant Thomasboro Landco, LLC:

A. Finding, concluding, adjudicating and/or declaring that Defendant J. Marion Uter's filing of the DIP Lender DOT with the Brunswick County, NC Register of Deeds constitutes the filing of a false lien or encumbrance as set forth in N.C. Gen. Stat. Ann. § 14-118.6,

B. Finding, concluding, adjudicating and/or declaring that such false filing constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act,

C. Awarding DIP Lender damages in an amount which will fully compensate it for the damages it suffered as a result of Defendant J. Marion Uter's violation of the North Carolina Unfair and Deceptive Trade Practices Act,

D. Awarding DIP Lender treble damages as prescribed by N.C. Gen. Stat. Ann. § 75-16, and

E. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this the __th day of February, 2025.

/s/ Jeremy C. Hollembeak
Jeremy C. Hollembeak
(admitted pro hac vice)
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 636-8317

Case 24-01038   Doc 39-4   Filed 02/14/25   Entered 02/14/25 16:03:51   Desc Exhibit D - Legalist - Thomasboro - First Amended Adversary Complaint   Page 45 of 46

jhollembeak@bairdholm.com

-and-

Mark P. Williams
NORMAN, WOOD, KENDRICK & TURNER
Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL  35205
(205) 328-6643

*Attorneys for Plaintiff DIP Lender Legalist, Inc.*